## FARRAR *v.* ROWLY et al.

Where one of the parties to a contract is bound to protect the other from eviction from
property delivered to him in pursuance of the contract, and which he was to receive free of
encumbrance, the seizure of the property by a mortgage creditor will put the former in
default from the time of the seizure.

Where a mortgage creditor by whom an order of seizure and sale had been taken out against
the mortgaged property, enters into an agreement with the debtor, by which it is stipulated
that the latter shall convey to him certain property free of encumbrance, and that, in consi-
deration thereof, the creditor shall assign to the debtor " all his right to the judgment, or
acknowledge satisfaction thereof, with subrogation, as may be required. by the debtor,"
the creditor may, on the seizure by another mortgage creditor of the property which was
to have been conveyed to him free of encumbrance, proceed by an hypothecary action
against the property originally seized, though in the possession of a third person, and cause
it to be sold to satisfy his claim, without having taken any steps to rescind the contract.

In case of doubt as to the meaning of a contract, the mode in which the parties undertook to
execute it themselves, is the best exposition of its intendment.

A married woman, who has obtained a judgment against her husband, is competent to receive
payment, and give a discharge. Her receipt is evidence of payment, as between the
parties.                                                                        :

A PPEAL from the District Court of Concordia, *Mayo*, J.  In this case the
defendant *Rowly* alone appealed.  The facts of the case are stated in the
opinion of the court, *infra*.  *Thomas* and *Snyder*, for the plaintiff.  *Frost*
and *H. A. Bullard*, for the appellant.  The judgment of the court was pro-
nounced by

EUSTIS, C. J.  This is an hypothecary action, brought by the plaintiff as as-
signee of a certain judgment rendered by the Supreme Court, in October,
1841, at the suit of *Jane Rowly*, against one of the defendants, her husband.  It
is stated at length in 19th Louisiana Reports, 583.  It decreed to the plaintiff,
*Jane Rowly*, the sum of $43,549 14, with five per cent interest from July 3d,
1841, until paid, for which sum she was declared to have the following securi-
ties, to wit: for $2,983 14, a special mortgage on the Marengo plantation, its
stock, slaves, &c., to date from June 15th, 1835; for $37,390, a legal mortgage
on all the property of her husband, to take effect from said date ; and also a le-
gal mortgage as aforesaid for $3,761, to take effect from the 15th of October,
1839.

The object of this suit is to subject a plantation, called the Bristol plantation,
and slaves, to the satisfaction of the two last mortgages.  *Rowly*, the principal
debtor, and *Frost*, who appears as a third possessor, are made defendants.
The prayer of the petition is, that the hypothecated property may be seized and
sold, and that the defendants pay the costs.

It has been presented to us as a ground of defence by counsel, that there
existed a subsisting contract, made between the plaintiff in this suit and *Charles*

*N. Rowly,* for himself, and as agent for *Jacob D. Lansing,* dated the 30th of December, 1843, which it was alleged precluded the possibility of enforcing the judgment on the part of the plaintiff, until that contract was rescinded, or otherwise disposed of in a lawful manner.

The question of law which this proposition presents under article 2042 of the Code, has been the subject of argument here, but it does not appear that the opinion of the court below was taken on it. It is set forth in the answer of the principal defendant, which also contains allegations of performance of the agreement on his part and that of *Lansing,* and other matters relating to the merits of the cause,.and concludes thus : "Wherefore he prays that this suit be dismissed ; that he have judgment in his favor; that the mortgage of *Mrs. Jane Rowly* be decreed extinguished by transaction, novation, and payment. If such judgment cannot be granted, he prays that their suits be reinstated in the condition in which they were previous to the compromise and settlement hereinbefore named, and for all such relief as the nature of the case may require ; and prays a trial by jury."

The whole case was submitted to a jury, who found a verdict in these words : "We, the jury, find for the plaintiff, and that the contract between *Thomas P. Farrar* and *Jacob D. Lansing,* is a *nullity ;* and that the judgment and mortgage in the case of *Jane Rowly* v. *Charles N. Rowly,* binds the Bristol plantation and property, and we assess no damages to either party."

In this case, as in the case of *Kemp* v. *Rowly,* which we have recently decided, *ante* p. 316, *Lansing, Rowly, senior,* the *Mechanics and Traders Bank,* with some additional parties, are all concerned in the promotion of one single purpose. The jury appear to have come to the same conclusion as to their respective interests, which was forced upon us in that case. After the finding, of the jury, we shall consider this case as exclusively between the plaintiff and *Charles N. Rowly,* the defendant.

It would extend this opinion to an inconvenient length to repeat the particular facts and incidents to which this litigation extends. The present suit is a portion of the whole, to understand which references may be had to the cases recently decided by this court, in which *Rowly* was a party. See pp. 208, 316, *ante.* The plaintiff, the assignee of the judgment of *Mrs. Rowly* against her husband, had obtained an order of seizure and sale against *Lansing* and *Rowly,* under which the Marengo plantation and slaves were under seizure, and the agreement of the 30th December, 1843, was made for the purpose of compromising and adjusting not only that suit, but all suits pending between *Mrs. Rowly,* *Lansing* and *Rowly,* or either of them. It is in substance as follows :

1st. That all suits then pending between *Mrs. Rowly,* and *Lansing* and *Rowly,* or either of them, should be dismissed, at their costs.

2d. That *Mrs. Rowly* should renounce the community of *acquêts* and gains between her and her husband, and acquiesce in a decree of separation from bed and board, dismissing her appeal therefrom.

3d. That her claim for alimony should be assumed, and paid, by *Farrar.*

4th. The the amount then due on the judgment was about $45,000 ; and shall be paid and satisfied as follows : 1st. The said *Lansing* and *Rowly* shall make to the said *Farrar,* either by judicial sale or otherwise, a good and unincumbered title to the one-third, divided, of the Marengo plantation, slaves, &c. The said third, when partitioned, to be composed as hereinafter specified. 2d. The said *Lansing* and *Rowly* to pay *Farrar* $5,000 ; $2,500 on the tenth of

March next, 1844, and $2,500, on the first of January, 1845, to be secured by notes, *in solido*, " and, in consideration of such title and payment, said *Farrar* is to assign all his right in said judgment, or acknowledge satisfaction of the same, with subrogation, as may be required by said *Rowly* and *Lansing*."

5th. The third of Marengo to be conveyed to said *Farrar*, is to be taken from the upper portion of the Marengo tract, to contain the fair third of the cleared and uncleared land, to be ascertained by survey. The third of the slaves, &c., and the third of the land falling to the share of *Farrar*, to be furnished with negro cabins, mills, &c.

6th. The division of the slaves to be made, &c.

7th. The balance of the slaves to be divided, &c.

8th. All the costs to be paid by *Rowly* and *Lansing*.

9th. The title of the one-third of the Marengo plantation, &c., as above set forth, to be made as follows : " After ascertaining the equitable division thereof, as herein before required, the sheriff shall advertise and sell the third of said property, which is to be transferred to said *Farrar*, under the order of seizure and sale by virtue of which he now holds said property, and at said sale said *Farrar* shall bid the sum of $40,000, and receive the sheriff's deeds thereto, in payment of so much of the judgment owned by him."

10th. The payment of the $5,000 may be made as follows, by the delivery of cotton, &c.

In fulfillment of this agreement a separation was made of the one-third of the plantation by a surveyor, and the third assigned to the plaintiff was delivered to him as well as his proportion of the slaves, stock, &c. No complaint appears to have been made as to the manner in which the agreement was performed on the part of *Rowly*. Both parties appear to have been satisfied with their bargain, until the plaintiff's possession was alleged to be disturbed by a seizure under an execution, issued on the 4th June, 1845, at the instance of the *Mechanics and Traders Bank* against the Marengo plantation and slaves.

Evidence was offered on both sides concerning the doings of each in relation to the different requisitions of the agreement; and, under this state of the cause, we are authorised to consider and determine on the rights of the parties, as in a direct act to rescind the agreement, or for damages for its non-execution. We have an aversion to send causes back for revision when we have all the evidence before us, especially when the parties have had a fair and full opportunity of supporting their respective rights, and of scrutinising those set up adversely to them. Such has been the case in the cause now before us. There does not appear to have been any question of law which requires our notice, reserved by bill of exceptions; and the argument at bar has been based on those questions of law which the facts present.

It is urged for the defence that *Rowly*, or *Lansing*, were never put in default; that all the conditions of the agreement were strictly complied with by them; that *Farrar*, the plaintiff, was in default, and that he never made, nor offered to make restitution of what he received under the agreement; that the agreement itself was a sale, and extinguished the judgment held by the plaintiff; and that no time was stipulated within which the conditions of the agreement were to be performed.

I. The breach of the agreement of which the plaintiff complains was, his eviction from the portion of the plantation and slaves possessed by him under the agreement, by seizure under judicial process, at the suit of the *Mechanics*

FARRAR
v.
ROWLY.

*and Traders Bank*, under which the whole plantation and slaves were sold to *Samuel Rowly*, with the crop gathered after the seizure, on the 5th of January, 1846. This is charged to have been an active violation of the agreement, which dispensed the plaintiff from the necessity of putting the other party in default. That *Rowly* was bound to protect the plaintiff from this eviction cannot be questioned; and no satisfactory reason has been given why he failed to do it, and he was in default from the day of the seizure.

II. So far from the judgment held by the plaintiff having been extinguished by the agreement, or what was done under it, it was to remain in force; and when the *good or unincumbered title, by judicial sale or otherwise*, and the payment, should be made, it was to be assigned, or satisfaction, with subrogation, was to be acknowledged, at the option of said *Rowly* and *Lansing*. In the mean time, *Farrar* was put in possession of the land and slaves, the parties were to proceed in the performance of the agreement, the execution of the judgment being of course suspended. This agreement we consider to have been what the parties called it, and understood it to be, a compromise or transaction, for the termination of the litigation in which the true interest of no one was likely to be advanced. Up to the time of the disturbance of the possession of *Farrar*, by the seizure at the instance of the *Mechanics and Traders Bank*, it appears to have been carried into effect, in good faith. The respective rights of the parties, that is *Rowly's* right to demand the extinguishment of the judgment, and *Farrar's* to exact the title to the land and slaves, depend on the completion of the conditions of the transaction, and on their due performance by the party obligated. The contract is entire, and by its very terms must stand or fall as a whole. Neither party has any advantage as to any rights acquired under it. We cannot recognise the principle on which it is maintained in argument, that *Rowly* is permitted to consider it in the light of a sale of the plantation and slaves to *Farrar*, while he fails to remove the encumbrance which rendered them valueless.

III. It is said there was no time stipulated within which the agreement was to be carried into effect. The mode in which the parties undertook to execute it themselves, is the best exposition of its intendment. The portion of the plantation and slaves were delivered immediately, and the defendant, *Rowly*, expressly relies upon his performance of his part of the agreement. Though it may be true that he was not in default, in point of time, so far as relates to furnishing the plaintiff with an unincumbered title, yet he was delinquent in suffering *Farrar* to be evicted, by reason of a judgment from which he was bound, and had the power, to protect him.

On the trial of the cause evidence was offered in support of the claim of each party on the other, arising out of the breach of the agreement and the injury sustained thereby, which were mutually attributed to each other. The jury, by their verdict, left the parties where their attempted compromise found them. We shall not disturb their verdict, as it turns exclusively on questions of fact, and upon matters with which planters must necessarily be particularly competent to come to a just conclusion. The terms of the verdict are peculiar, but its intendment is unqualifiedly in favor of the plaintiff as to the agreement, as to his judgment, and as to the claims of each party for restitution and indemnity.

There are several matters to which a great deal of importance seems to have been attached, which we do not make any mention of, on account of the view we have taken of the real merits of this case.

It was impossible for a title to be given to *Farrar*, under the agreement, by a judicial sale, except after the encumbrances, on the portion of the plantation and slaves which he was to take,should be removed. They could have been removed by the agreement of the mortgagees, or by payment. Their removal was within the power of *Rowly* to accomplish, and we have seen no attempt to effect that object on his part, which we are permitted to consider as serious.

It is alleged that the sum of $4,000 was paid on the judgment in favor of *Mrs. Rowly*, in January, 1842. This matter was before the jury. The evidence in support of this sum consists of the simple receipt of that sum, under an agreement to which it was appended, signed by *Mrs. Rowly* during her coverture. The verdict of the jury gives effect to the judgment for its whole amount, and the jury must have considered the evidence as insufficient to establish the payment of this sum of $4,000, which was was formally pleaded in the answer. In this, we think, the jury erred. *Mrs. Rowly*, having a judgment against her husband, was competent to receive payment, and give a discharge. The receipt, having been offered in evidence without objection, is good proof of the payment between the parties. The judgment was reduced before the plaintiff acquired it ; and the imputation must be made according to the agreement of the parties at the time the payment was made. In this respect the judgment appealed from must be amended.

It is therefore ordered that the judgment appealed from be amended, by allowing interest thereon from the 18th of July, 1842, and that, in other respects, it be affirmed ; the plaintiff paying the costs of this appeal, and the defendants those in the court below.