W. D. WILSON *et al., Appellants,* v. TALLAHASSEE WATER WORKS COMPANY, A BODY CORPORATE, ETC., *Appellee.*

1. A city ordinance fixing maximum rates to be charged consumers by a water company, provided annual flat rates for consumers generally based upon the fixtures through which or the business for which water is furnished, and then provided "Hotels, mills, manufactories and other large consumers by meter or special rates. Meter rates per 100 cubic feet $ .25," with nothing in the ordinance to indicate that meter service to other consumers was contemplated. This limitation upon maximum meter rates applies only to consumers of the class designated in the ordinance.

2. Under a city ordinance authorizing a water company supplying water to the city and its inhabitants to charge such rate for its use as it may from time to time establish, provided it shall not exceed certain designated maximum charges, the company may fix any reasonable rate to be charged to consumers for service not embraced in those classes for which a maximum rate is prescribed.

352      SUPREME COURT OF FLORIDA,

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

3. A minimum annual charge by a water company for meter serv-
ice to small consumers is not necessarily unreasonable be-
cause in excess of what a large consumer would pay for the
quantity of water used.

This case was decided by the court *En Banc*.

Appeal from the Circuit Court for Leon county.

The facts in the case are stated in the opinion of the
court.

*Geo. P. Raney* for appellants.

BRIEF OF GEO. P. RANEY, FOR APPELLANTS.

In the Supreme Court of Florida.
January Term, A. D. 1902.

W. D. Wilson *et al.*, Appellants, v. Tallahassee Water
Works Company, a body corporate, etc., Appellee.

Appeal from Circuit Court Leon County.

The main question involved in this case, briefly stated,
is whether or not the "meter rates per hundred cubic feet
of twenty-five cents" clause or charge to be found in the
Tallahassee ordinance of March 25th, 1889, granting to
R. L. Bennett and associates the privilege of constructing,
operating and maintaining a system of water works in the
city of Tallahassee, of which ordinance a copy is annexed
to the bill and made a part thereof as Exhibit A (pp. 10-15
of the transcript), is general and applies to small consum-
ers like complainants or only to large consumers like hotels,
mills and manufactories. The complainants, appellants,
filed their bill on March 27th, 1901 (see pp. 1-17 of the
transcript), setting up their course of dealing with the de-
fendant, appellee, as meter consumers, and the fact of the
furnishing of water to them in accordance with said meter
rate charge for a number of years, and the uniform course

VOL. 47, JANUARY TERM, 1904.        353

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

of dealing upon the part of the company in furnishing water to small consumers at such rate and their right under said ordinance to have water furnished to them in the future at such rate and their willingness to pay for the same at such rate, and the action taken by the defendant company through its board of directors on February 11th, 1901, by the resolution of that date annexed to the bill as Exhibit C (pp. 16-17 of the transcript), reciting that service by meter was only intended for large consumers and that it had been demonstrated by the past experience of the company that a large portion of its consumers thus served obtained such service at much less than the established rate for a single spigot on account of the small quantity of water consumed, in some instances so small as hardly to pay the expense of the quarterly examination of the meter; and resolving that beginning with April 1st, 1901, no consumer, whose present contract did not extend beyond that date, should be served by meter, at the established meter rate, who would not guarantee a quarterly consumption of at least 1,000 cubic feet or agree to pay a minimum price of $2.50 per quarter and that all consumption over 1,000 cubic feet per quarter should be at the established rate of twenty-five cents per hundred cubic feet; and resolving further: that this regulation should apply to those consumers using meters whose contracts extended beyond March 31st, 1901, after the termination of such contracts respectively, beginning with the first day of the quarter after the date of such termination; and that all contracts theretofore made for meter service which had not been executed since March 31st, 1900, should be terminated from March 31st, 1901, and that all contracts hereafter made for meter service should conform to such regulation; and directing the superintendent to mail copy of these resolutions to each meter consumer. Under date of March 1st, 1901, the superintendent of the defendant company mailed to complainants a copy of said resolution enclosing the same in a note on the date stated calling their attention to such resolution and requesting complainants to

354    SUPREME COURT OF FLORIDA,

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

call at the office of the company before April 1st, 1901, and sign a contract in conformity with the regulations established by said resolution as it would go into effect on April 1st, 1901. A copy of said note is attached to the bill as Exhibit D (p. 17 of the transcript). The bill also asserts the unwillingness of complainants to comply with the terms of such resolution and alleges that the complainants are severally dependent upon defendant for water and that the enforcement of such resolution by the defendant will deprive them severally of the use of any water unless they submit to the illegal demand of defendant set forth in said resolution of either severally using 1,000 cubic feet of water per quarter at the meter rate or severally paying to the defendant the sum of $2.50 per quarter for whatever less quantity of water they may severally use; and also alleges that complainants severally sustained the expense of connecting their respective premises supplied with water with the main pipes laid by the defendant in the city of Tallahassee and that such expense has included both the cost of the pipe necessary for such purpose and the appliances and labor necessary for making and maintaining such connection and that all meters used in the city in taking water for such consumers had been purchased and paid for by such consumers upon the basis of the express assurance of said company or the assurance implied by its course of dealing that if used water would be supplied by the defendant at the price of twenty-five cents for each one hundred cubic feet of water used. The bill prays an injunction restraining the defendant from refusing to supply and from abstaining from supplying water to each and every of them as shall continue to pay it for water supplied at the rate of twenty-five cents per hundred cubic feet as heretofore, through their respective meters.

The defendant answered the bill on March 30th, 1901 (pp. 18-29 of transcript). In view of the full presentation of the pleadings, and the issues presented by them, made hereafter and required by the nature of the case, it is, we

think sufficient at this point to say that the contention of the answer is that the construction placed upon the ordinance by the complainants is untenable, and to further say that the answer makes a detailed presentation of matters to overcome the complainants' contention that a practical construction sustaining complainants' contention has been given to the ordinance by the course of dealing between the parties.

The replication was filed on July 2nd, 1901 (pp. 29-30 transcript).

On July 12, 1901, the bill was dismissed as to Aaron Levy, one of the complainants, on complainants' motion; the defendant not objecting (pp. 30-31 of transcript).

The cause afterwards came on to be heard upon motion of complainants for an injunction as prayed for in the bill and having been submitted on the bill, answer and replication as of the date of the filing of the answer, a decree was made on the 26th day of August, 1901, denying the injunction, and that defendant recover its costs (pp. 31-32 of transcript).

From the above decree of August 26, 1901, the complainants appealed to this court (pp. 32-33 of transcript), and they have assigned errors (pp. 33-34 of transcript) as follows:

1st.  The Circuit Court erred in denying in and by its said decree the injunction prayed for in the bill of complaint.

2nd.  The Circuit Court erred in rendering said decree of August 26th, 1901.

The presentation which will now be made of the case is applicable under either of such assignments.

The issues presented by the pleadings are as follows:

The allegations of the 1st, 2nd and 3rd paragraphs of the bill of complaint (pp. 2-3) which are in effect that the defendant is a body corporate under the laws of Florida with place of business at Tallahassee; and that the city ordinance was passed and approved March 25, 1889, and

that the copy annexed to the bill is correct, and that the ordinance was accepted by R. L. Bennett for himself and associates on March 25, 1889, as therein alleged; and that the defendant company was organized by Bennett and his associates to secure the benefits and privileges of such ordinance, are admitted by the first three paragraphs of the answer (pp. 18-19).

The allegations of the 4th paragraph of the bill (p. 3) that not long after the approval and acceptance of the ordinance, and not later than 1890, the defendant established and has ever since maintained and operated in Tallahassee a system of water works under the provisions of said ordinance, and have sunk wells and have laid water pipes and mains along the streets, and have supplied and are now supplying the inhabitants of the city and others with water at their places of business and residence and otherwise, is specially answered by the 4th paragraph of the answer (pp. 19-20), which states "it is true, as alleged by complainants" that the system of water works contemplated was completed and put into operation in 1890; and has ever since been maintained and operated by defendant; and that defendant has supplied and continues to supply such of the inhabitants of the said city as comply with the defendant's reasonable rules and regulations and pay its established prices, with water for domestic, sanitary and other useful purposes; and that it also supplies some other persons who live outside of, but within the vicinity of such city.

The allegation of the 5th paragraph of the bill (p. 3) as to the 9th section of the ordinance (pp. 13-14) authorizing the defendant to make reasonable rules and regulations for the government of private consumers in the use of its waters and to charge such rates for its use as it may from time to time establish, but that it is, however, expressly provided therein and thereby that the rates charged per annum shall not exceed those named in the schedule incorporated in such section, is expressly admitted by the 3rd paragraph of the answer (p. 20).

The case as made by the 6th and subsequent paragraphs of the bill is as follows:  The 6th paragraph alleges (pp. 3-4) that under the 9th section of the ordinance any and all persons taking water through meters have been and still are entitled to the same at the maximum price of 25c for each 100 cubic feet of water so taken, unless the same be taken for laying brick or for plastering, and in such cases of laying brick the price is and has been 10c for each 1000, and in case of plastering the price is 50c for each one hundred yards.  The 7th paragraph (p. 4) alleges that defendant has from time to time *since and beginning with the year* 1890, if not before, sold and furnished divers citizens of the city meters for the purpose of measuring the water supplied them through the same, and of supplying them water through the same and with the understanding that they should and would be supplied with water through such meters by defendant at the price of 25c for each 100 cubic feet of water supplied by defendant and has after such meters have been obtained from and supplied by defendant supplied them from year to year and still is supplying them through meters so obtained, as well as through meters obtained from other sources, with water in such quantity or quantities as they have from time to time seen fit to use at the stated price; and that such citizens, among whom are included the complainants and others, began taking water through such meters with the purpose and understanding of taking the same from year to year and have continued to take and are still taking the same from year to year and desire and intend taking the same in the fuure.  That (8th paragraph pp. 4-5) all meters used in the city in taking water as aforesaid have been purchased and paid for at from $8.00 to $13.00, and have been purchased upon the basis of the express assurance of said company, or the assurance implied by its course of dealing, that, if used, water would be supplied by defendant at the price of 25c for each 100 cubic feet of water used.  That (paragraph 9 pp. 5-6) up to the present time there has been no

pretense of any right upon the part of the defendant to charge any person, a citizen or resident of the city, taking water through meters, more than 25c for each 100 cubic feet so taken, or at such rate; nor has a greater charge been made, though a less charge has been made under special contracts for laying brick or plastering; but lately on February 11th, 1901, the directory of the company has adopted a resolution, by the preamble of which it is set out that service by meter was intended for large consumers only and that it has been demonstrated by the past experience of the company that a large proportion of the customers served by meter obtain water at much less than the established rate for a single spigot on account of the small quantity of water consumed (which quantity is therein stated to be in some instances so small as barely to pay the expenses of the examination of the meter); and then the resolution declares that, beginning with April 1st, 1901, no consumer whose present contract does not extend beyond that date shall be served by meter at the *established rate* who will not guarantee a quarterly consumption of at least 1000 cubic feet, or agree to pay a price of $2.50 per quarter, and that all consumption over 1000 cubic feet per quarter shall be at the established rate of 25 cents per 100 cubic feet; and further, that such regulation shall apply to those consumers using meters whose contracts extend beyond March 31st, 1901, after the termination of such contracts respectively beginning with the first day of the quarter after the date of said termination; and that all contracts for water service made before the adoption of such resolution which have not been executed since March 1st, 1900, shall be terminated from March 31st, 1901, and that all contracts for water service subsequent to the adoption of such resolution shall conform to such resolution. The superintendent of the company is directed by resolution to mail a copy to each meter subscriber, and has within the last six or eight days prior to the filing of the bill done so, including complainants, the same being accompanied by a communication from him dated

March 1st, 1901, calling attention to such accompanying resolution and requesting them to call at the office of the company before April 1st, 1901, and sign a contract in conformity with the regulation thereby established "as it will go into effect on that date;" such resolutions and communication have been duly received by the meter consumers including complainants. Complainants (paragraph 10, pp. 6-7) have no contract, nor has either of them any, extending beyond April 1st, 1901, or even to such date; and neither of them has heretofore consumed quarterly as much as 1000 cubic feet of water, and do not, nor does either of them intend to do so in the future; nor is either of them willing to agree, nor will he or she agree, to pay $2.50 per quarter to said defendant company for the water he may use; and they hereby severally refuse to use 1000 cubic feet of water per quarter, and to pay $2.50 per quarter to defendant for the water they or either of them may use, and they each further refuse to sign any contract to use so much as 1000 cubic feet of water per quarter, or to pay $2.50 per quarter for whatever water he may use. That (paragraph 11, p. 7) under such ordinance and circumstances detailed above they are severally entitled to use and be supplied in the future by the company with water in such quantities, however much less it may be than 1000 cubic feet per quarter at the established rate of 25 cents for each 100 cubic feet for any and all water actually furnished to them by said defendant and they are severally entitled to have water furnished to them through their several meters by said company at such rate in such quantities as they may desire to have, take or use however much less the quantity may be than 1000 cubic feet per quarter. That (paragraph 12, p. 7) complainants are moreover severally entirely dependent upon the defendant for water and the enforcement of said resolution by the defendant will entirely deprive them severally of the use of any water unless they submit to the illegal demand of the defendant set forth in said resolution of either severally using 1000 cubic feet of water at the established regular

rate, or severally paying to the defendant the sum of $2.50 for whatever quantity of water they may severally use. That (paragraph 13, p. 8) complainants have severally sustained the expense of connecting their respective premises, supplied with water, with the main pipes laid by the defendant in the streets of Tallahassee, and such expense has included both the cost of the piping necessary for such purpose and of the appliances and labor necessary for making and maintaining such connection.

Section 9 of the ordinance (pp. 13-14) the construction of which is involved in this case is to be found in Exhibit A to the bill of complaint, which exhibit (pp. 10-15) will be referred to for the terms and legal effect of such section upon the question involved herein.

The 6th and subsequent paragraphs of the answer contain what may properly be regarded as the defense to the bill of complaint.

It is stated to be "true" (paragraph 6 of the answer, p. 20) that by the schedule contained in section 9 of the ordinance the maximum meter rate is fixed at 25 cents per hundred cubic feet; and that heretofore all persons who have applied to defendant to be supplied with water by meter and have otherwise complied with the regulations of defendant have been furnished with water at 25 cents per 100 cubic feet for the quantity of water actually used, whether much or little; but that defendant is *informed and believes* and thereupon alleges that the said 9th section does not require the defendant to furnish water by meter, or at meter rates, except to large consumers; and that under the provisions of said ordinance giving the defendant authority to make reasonable rules and regulations for the government of private consumers in the use of water and to charge such rates for its use as it may from time to time establish, provided the rates charged do not exceed those named in the schedule, defendant has the right to refuse to serve any customer by meter who is not a large consumer.

That (paragraph 7, pp. 21-22) it is true that beginning with the year 1890 defendant sold and furnished to divers citizens of said city water meters with intention of supplying them with water through the same and for the purpose of measuring the amount of water consumed by them but defendant alleges that the sale of such meters for the purpose of measuring the water supplied by it has not been confined to the defendant but any dealer in waterworks supplies was permitted to furnish such meters, and a large proportion of the meters now in use in the city were furnished by others than the defendant. That it is true that when such meters were put in it was either with the express or implied understanding that the rate to be charged for the water supplied through the same was the rate named in said schedule, viz: 25 cents per 100 cubic feet; and that all persons who have been supplied with water by defendant through meters from the beginning of the operation of its works to the present time have been supplied at said rate without regard to whether the quantity of water consumed was much or little. And that while it is true that complainants are among those who have been for divers periods of time and are now being supplied with water by defendant through meters at the rate of 25 cents per hundred cubic feet, without requiring of them a minimum limit of consumption, the defendant does not know and has no information upon which it can form a belief as to whether complainants began taking water through such meters with the purpose and understanding of taking the same from year to year or that they desire or intend to take the same in the future; and defendant thereupon denies such allegation.

Defendant avers that some of the consumers that take water of the defendant through meters at meter rates, at the time of arranging to be thus supplied entered into written contracts with defendant for such service for the period of one year, with the express provision contained in such contract that the agreement should continue in force after

362    SUPREME COURT OF FLORIDA,

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

the expiration of the term named until either party should give notice of a desire to terminate the same, such notice by the consumer to be given in writing at the office of the defendant; and the meter at the residence of R. A. Whitfield was put in under such an agreement entered into between the defendant and B. C. Whitfield, a son of said complainant, and that there has never been any other agreement with reference to the use of water through such meter for said complainant.    That complainants W. D. Wilson and Aaron Levy entered into a similar agreement with defendant as flat rate customers; the former in the year 1890 and the latter in the year 1891; but Levy in the fall of 1893, and Wilson in the summer of 1897, changed from the flat rate to the meter service but neither of them executed any new contract when such change was made.    No other complainant has ever had any express contract with defendant for either flat rate or meter service and no contract exists at present between defendant and any of said complainants, other than as hereinbefore stated, except such as may be implied from defendant having supplied the complainants with water and their use of the same and paying therefor at the rate of 25 cents per 100 cubic feet consumed.    The defendant (paragraph 8, p. 23) admits upon information and belief the cost of meters as alleged in the 8th paragraph of the bill (pp. 4-5); and that it is true that such meters have been purchased and put in either under express contracts of the character "hereinbefore set out" or on the verbal representation of the defendant's agents, or an implied representation from the course of dealing with the defendant and its meter customers that the water used would be supplied by measurement at the rate of 25 cents per 100 cubic feet; but defendant avers it is not true that defendant ever gave any assurance to such customers or entered into any contract with them "other than as hereinbefore set out" by which defendant bound itself to continue such service for any definite length of time or by which it abridged or abdicated its rights under the ordinance to make reasonable

VOL. 47, JANUARY TERM, 1904.          363

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

regulations and to charge reasonable rates within the limits prescribed in such ordinance, for the use of the water supplied by it.

That (paragraph 9, pp. 23-29) up to the time of the adoption of the resolution of February 11, 1901, defendant has never claimed the right of charging the citizens, residents and inhabitants of said city, who have used water through meters more than 25 cents per 100 cubic feet; nor has ever made a greater charge for such service; nor does it now claim that where meter service is given to large consumers it has the right to charge more than the rate named in the ordinance; but defendant avers upon information and belief that under the terms of the ordinance it has always had the right to refuse at any time to give a meter service to any one unless there was to be a sufficient consumption of water by such customer to class him as a large consumer and defendant has the right under said ordinance to adopt a regulation such as is contained in the resolution of February 11, 1901, and to enforce the same. And defendant says that conceding the meter service to complainants and others was largely experimental and, with the expectation that as such customers became accustomed to the free use of water their consumption thereof would greatly increase, as such consumers would avail themselves of a greater variety of uses of such water than under the flat rate provided by such ordinance (as the cost would comparatively be not so great), that from actual experience it has been demonstrated that of the 214 customers served by meter the average consumption during the year 1900 of fifty-one of them was less than one dollar per quarter; of sixty-one of them was from one dollar to two dollars per quarter and of twenty-one of them was from two dollars to two dollars and a half per quarter and but eighty-one consumers averaged more than $2.50 per quarter. That the total number of private consumers is 333 and of these 214 are supplied through meters; and that of 33 new customers obtained by defendant since Jan. 1, 1899, 21 have ap-

plied for and obtained meter service; and that during 1895,
5 customers changed from the flat rate service to meter
service; during 1896, 7, so changed; during 1897, 9 so
changed; during 1898, 11 so changed; during 1899, 5 so
changed; during 1900, 4 so changed; and during 1901, 2
so changed.

The average consumption of Aaron Levy has never
been less than $2.50 per quarter; and that of said W. D.
Wilson for 1898, 1899, and 1900 has been $0.58 per quarter;
that of said R. A. Whitfield for 1895, 96, 97, 98, 99 and
1900 has been $1.64 per quarter; and that of said John P.
Roberts for 1899 was $0.52 per quarter; that of said D. B.
Meginniss, Jr., during 1896, 97, 98, 99 and 1900 was $1.02
per quarter; and that of John D. Perkins during the same
years was $1.94 per quarter; and that of Oscar C. Van
Brunt during the same years was $1.63 per quarter; and
that of said Jessie C. Meginniss during the years 1895, 96,
97, 98, 99 and 1900 at her residence was $0.34 per quarter
and that of the First National Bank during the same years
was $0.97 per quarter.   The service given said Levy con-
sists of bath tub, wash basin, kitchen sink, one spigot on the
back porch, one in the stable and one in the yard; that the
service given Whitfield consists of a spigot in the kitchen,
one on the second floor of dwelling, one in the yard, and one
in the stable; the service given Meginniss consists of two
sinks and one spigot for sprinkling the streets; that given
Van Brunt consists of a spigot in the kitchen and a bath-tub
and that given Papy consists of a spigot in the kitchen and
one in the yard; and that given Wilson is one spigot; and
that given Perkins consists of a spigot in the kitchen, a
bath-tub and a spigot in the yard; and that given Miss
Meginniss consists of a spigot in the yard and a bath-tub;
and that given the First National Bank consists of a wash-
stand, a water closet and two spigots.

That where customers are served by meter an agent
of the company. is required to examine each meter once
each quarter and to keep a record of the readings thereof

VOL. 47, JANUARY TERM, 1904.        365

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

in a book kept by the defendant for that purpose and to make out and to present to each customer a bill based upon such record; and in many cases the amount received from individual meter customers does not pay for the actual collecting the same. That defendant having made a fair experimental test of consumption by meter and determined from actual experience that the increase in consumption has not been what was anticipated and that meter customers have been and are being supplied in a large majority of instances with more than one spigot, and in many instances with several, at an annual cost of less than the amount allowed by ordinance for a single spigot for domestic use only; and that in some instances the amount collected quarterly does not reimburse the defendant for the actual cost of collection, the defendant, by the Board of Directors adopted a resolution of February 11, 1901, a copy of which is attached to the bill as Exhibit C (pp. 15-17); and defendant alleges that such resolution prescribes a reasonable regulation and one within the limitation of the ordinance aforesaid.

That defendant's superintendent has been directed to notify such of its customers as are being served by meter of the adoption of such resolution and to request them to call at defendant's office before April 1st and sign contracts in conformity with such regulations and that such notices were sent to complainants and others. That it is true that defendant intends to put such regulations into effect and to no longer serve to any customer by meter who will not guarantee a minimum consumption of 1000 cubic feet of water per quarter, or pay the company $2.50 per quarter or ten dollars per year as a minimum. That defendant is informed and believes and thereupon alleges that it has the right to adopt and put into effect such regulation; that the same is a just and reasonable regulation and within the terms of the ordinance aforesaid and complainants and others similarly situated are not entitled as a matter of right to be furnished with water through their several meters, at the

rate prescribed for meter service, in such quantities as they may desire to have, take or use the same, however much or less the quantity may be than 1000 cubic feet per quarter; and defendant thereupon denies that complainants or any of them have any such rights.

Defendant has no knowledge and no information sufficient to base a belief upon as to whether the complainants are entirely dependent upon it for water and whether the enforcement of such resolutions would entirely deprive them severally of the use of any water unless they complied with the terms of such resolution.

That it is true that complainants or at least some one other than defendant, have severally sustained the expense of connecting their respective premises supplied with water with the mains of defendant and that such expense has included both the cost of piping necessary for such purpose and the appliances and labor necessary for making and maintaining such connection. That such expense has been borne and is borne by consumers whether by meter or flat rate and that such fact does not preclude defendant from adopting reasonable regulations for the government of its water supply and from enforcing such regulations when it becomes necessary, by cutting off the water supply from such consumers as refused to comply with its reasonable regulations.

There is a general denial to the answer.

The bill is sworn to by each of the complainants who severally say each for himself and herself that they have read the same and "that the facts therein stated are true." The answer is sworn to by C. A. Spencer, superintendent of the defendant company, who says that the facts set forth in the answer "are true except such as are related on information and belief and these he believes to be true."

The 9th section of the ordinance (pp. 13-14) reads as follows: Section 9. That said Company, its successors and assigns, shall have the right to make reasonable rules and regulations for the government of private consumers in the use of its waters and to charge such rate for its use as

it may from time to time establish: Provided, The rates charged per anum shall not exceed those named in the following schedule, to-wit:

Dwellings, single spigot for domestic use only......$12.00
Bath-tub in addition...............................  8.00
Water closets......................................  8.00
Wash Basins........................................  4.00
Urinals·...........................................  4.00
Yard Sprinklers, with fifty feet of hose and ¼ inch
　　nozzle in use not more than two hours per day.. 12.00
Academies and Schools..............double private rates
Boarding House.....................double private rates
Bar rooms.......................................... 24.00
Bar rooms and restaurants.......................... 36.00
Bakeries and barber shops.......................... 24.00
Druggists and soda fountains....................... 24.00
Fountains ...............................$12.00 to 50.00
Livery Stables........................... 25.00 to 50.00
Offices, single rooms..............................  6.00
Photograph galleries............................... 24.00
Stores, same as dwellings per fixture.
Steam Engines, per horse power.....................  5.00
Hotels, mills, manufactories, and other large consumers
　　· by meter or special rates.
Meter rates per 100 cubic feet.....................   .25
Building, laying brick per thousand................ ·  .10
Plastering, per 100 yards..........................   .50

The theory of the bill of complaint is that under the ordinance the defendant company can not charge for water supplied through meters more than at the rate of 25c per 100 cubic feet. We contend, 1st. That such is the plain meaning of the ordinance according to its terms, and it is not reasonably subject to any other interpretation; and 2nd, That, as shown by the bill of complaint and not successfully controverted by the answer, if there is any doubt as to the literal meaning of the ordinance, such doubt has been resolved in favor of our contention by the practical construction which has been given the ordinance on this point by the uniform dealing of the defendant and other parties under it from the beginning of the practical operation of

the enterprise in 1890. 3rd. The resolution of February 11, 1901, is not a reasonable regulation.

*As to the first of these contentions*: The 9th section of the ordinance after conceding to the company the right to make *reasonable rules and regulations* for the *government of private consumers* in the *use* of its waters, and to charge *such rates* for its use as it may from time to time establish, limits such right to *charge rates* by a proviso to the effect that "rates charged per annum should not exceed those named in the following schedule." The rates named in the schedule may be charged "per annum," or, in other words, water may be furnished *by the year* for any purpose or in any manner named in the schedule. There is nothing in the nature of any head or rate of charge that makes a "per annum" service impracticable. If it be that the nature of measure of the charge made for water used for "laying brick" or of that for "plastering" (the last two items) exempts these two heads from the proviso, still such exemption has no effect to exempt the meter charge from such proviso. The only reason which suggests itself as capable of being urged as a ground for the exemption of such two heads is that "laying brick" and "plastering" in their nature suggests that they are each special jobs, and that it is unlikely any one would want water by the year for such purposes; but why should not "building" contractors wish to take water by the year for such purposes, where they can, under an ordinance like this, be secure against an increase of the rate which a boom in building and consequent increased demand for and use of water might suggest and make beneficial to the water company. There is nothing in such a suggestion of exemption from the proviso, and we are unable to see any good reason for one. It is not the purpose of the ordinance to limit the rate of charges where water is taken for a less period, but to secure private consumers the right to have water furnished them by the year at rates not greater than those set out in the schedule. The purpose of the proviso, upon the part of both

the city and the company, was that any person who would agree to take water by the year for any purpose, or in any manner named in the schedule should have it at a rate not exceeding that prescribed by the schedule, and this was a special inducement held out by the ordinance to all persons who might take water *by the year;* and the dealing of the company up to February 11, 1901, has been entirely upon the same line. The schedule contains 22 distinct classes or heads of charges, and we are unable to see why the head of "Meter rates per 100 cubic feet .25" is not as much within the reason and protection of the stated proviso, for all private consumers desiring to take by the year, as any other head is. There is nothing in the arrangement of the "Meter" head that suggests any actual or intended difference as to it. For all takers of water by the year through meters it means that the company can not charge more than at the rate of 25c for each 100 cubic feet however much or little they may use or for what purpose, as the first heading means that one, not included in another heading or class, having at his dwelling house a single spigot and confining his use of water through such spigot to domestic purposes and excluding purposes covered by other classes, shall not be charged more than $12.00 per annum. The substantive character and equal dignity of the "Meter" class as a class or heading, is additionally shown by its being made the standard of maximum rate of charge for, and as expressed in the heading of, "Hotels, mills, manufactories and other large consumers," in the absence of special rates to be agreed on by the company and any such large consumers. And it may be here observed that such reference to the "Meter" head or class, instead of being a limitation of the Meter rate to large consumers as asserted by defendant in paragraph 6 of answer, is but an application of it as also controlling large consumers having meters in the absence of a special rate. In the absence from the ordinance of anything indicating the contrary there is no reason for giving to the Meter heading less effect in favor of those falling

under it than to other headings. The company contests
this interpretation, but we are not at a loss to anticipate the
rule of interpretation it will invoke to extract from the
language of the ordinance, as applied to its subject-matter,
a different meaning. A right to charge greater per annum
rates than are prescribed by the schedule can not be founded
by the company on power to make "reasonable rules and
regulations for the government of private consumers in the
use of its waters," but must rest if at all, upon the right to
"charge such rates for its use as it may from time to time
establish." See section 9 of ordinance (pp. 13-14). Obvi-
ously a purpose of the company, in establishing a "Meter"
class or heading without limit, maximum or minimum, as
to the quantity of water to be used or of the purpose for
which it should be used, was to secure the company against
loss by the wasteful use of water possible under the other
heads. The answer practically admits this in its explanation
of the miscalculation or disappointment of the company as
to the quantity which meter takers would use.

*As to the 2nd or practical construction contention.*

The pleadings show that the company went into prac-
tical operation in 1890, and has been in continuous operation
since (paragraph 4 of the bill, pp. 3, and paragraph 4 of the
answer, pp. 19-20) ; and the bill shows that the company
has through meters sold by it for the purpose and by 'others,
continuously from that time supplied to the citizens of Talla-
hassee, water at the meter rate (paragraphs 7, 8, 9, 13 of
bill, pp. 4-6, 8). The answer of the defendant (which has
no other status or effect as evidence upon this hearing than
that of an affidavit of Mr. Spencer), fails to meet, or impair
the case of practical construction of and operation under the
ordinance according to the meaning and effect thereof as
interpreted by complainants. It states (paragraph 6, p. 20)
that all persons who have applied to defendant to be supplied
with water by meter, and have otherwise complied with the
regulations of defendant (no regulation inconsistent with
our contention being set up) have been supplied at meter

rates regardless of the quantity used.   The answer (par. 7, pp. 21-22) admits the sale by the defendant of meters to be used in measuring water to be supplied at meter rates, and that meters, including those furnished by others than the company, were put in either with the express or implied understanding that the meter rate was to be charged, and water has been supplied through them at the meter rate regardless of the quantity used.   (See also par. 8 of answer, p. 23).

An attempted qualification to this is in reply to the allegation of the bill (par. 7 of bill, p. 4) that the citizens of Tallahassee, including complainants, began taking water through such meters with the purpose and understanding of taking the same from year to year, and have continued to take and are still taking the same from year to year and desire and intend taking the same in the future, and such qualification is merely that the defendant does not know and has no information upon which it can form a belief as to whether complainants began taking water through meters with such purpose and understanding or that they desire or intend to take the same in the future.   Such an allegation is not evidence, either on an application for an injunction of the negative of the assertion of the bill, but on this hearing the affidavit of the complainants to the bill is evidence of the truthfulness of the allegation of the bill and substantiates such allegation for the purposes of this hearing.

The statement of the answer that some of the consumers at the time of arranging to take water through meters entered into a written contract with defendant for such service for the period of one year, with the express provision contained in such contract that the agreement should continue in force after the expiration of the term named until either party should give notice of a desire to terminate the same, such notice by the consumer to be given in writing at the office of the defendant, is not inconsistent with the above stated allegations of the bill as to the purpose

and understanding of meter uses to continue taking from year to year. The provision that such agreements should continue in force, read in the light of the ordinance, shows an implied purpose and understanding that the extension should be from year to year, the meter rates being annual rates. Mr. Whitfield seems to have so continued and the other complainants have not made any written agreements as to *meter* rates.

The averment (par. 8 of the answer, p. 23) that it is not true that the defendant ever gave any assurance, or entered into any contract, other than the preceding admissions of the same paragraph imply, by which it bound itself to continue such meter service for any definite length of time, or abridged or abdicated its rights under the ordinance to make reasonable rules, and charge reasonable rates within the limits prescribed by such ordinance for the use of water, need no notice because it is not a statement of any fact, but a mere conclusion of law, and no rights under the ordinance against complainants' contention have been shown.

A defense set up by the 9th and subsequent or unnumbered paragraphs of the answer (pp. 23-29) is upon the theory that although up to the adoption of the resolution of February 11, 1901, the company had never claimed the right to charge, nor actually charged any one using meters more than the stated meter rates, yet under the ordinance it is only where meter service is taken by so called "large consumers" that the company can not charge more than the stated meter rate of 25c per 100 cubic feet, and that it has always had the right to refuse at any time to give the meter service to any one unless there was to be a sufficient consumption of water by the customers to class him as a "large consumer," and that it consequently has the right to adopt the regulations of February 11, 1901, (whose adoption and the notice thereof and of the alleged intention to enforce the same made by the bill including such intention itself are all admitted) and to enforce the same. Considering that

the meter service to complainants and others was largely experimental and with the expectation of a larger and more varied use of water (as the cost would comparatively be not so great) than under the flat rates provided by the ordinance, it proceeds to give the number (51) of the 214 meter service customers who, during the year 1900 consumed on an average less than $1.00 of water per quarter, and the number (61 of such 214) who consumed from $1.00 to $2.00, and the number (21) who consumed from $2.00 to $2.50 per quarter, and stating that 81 consumed more than $2.50 worth of water per quarter, but not stating how much they or any of them consumed; and also stating that the total number of consumers is 333, and thereby showing that there are 113 who do not use meters, but not showing what they pay per quarter or otherwise; and showing that of 33 new consumers obtained since January 1, 1899, 21 have obtained meter service, and showing that since the year 1894, 43 have changed from flat rate to meter service. The average consumption of the complainants is then given and shown to be less than $2.50 per quarter or than $10.00 per year, and the necessity for examination of meters by the company, and for a record of the readings thereof and of presenting bills to consumers is then set forth with the averment that in many cases (not stating which though) the amount received from individual meter customers does not pay the cost of collecting. The answer, then, premising that the company has made a fair experimental test of consumption by meter, and been disappointed as to result, and found that meter customers are being supplied in a large majority of instances (not stating how many) with more than one spigot and in many instances (not stating how many) with several, at an annual cost of less than the amount allowed by the ordinance for a single spigot for domestic use only (but not stating that any water is used without being paid for) ; and that in some instances (how many not stated) the amount collected quarterly does not reimburse the defendant for actual cost of collection, states

374    SUPREME COURT OF FLORIDA, ·

Wilson et al. v. Tallahassee W. W. Co.—Brief for Appellants.

that the company adopted the resolution of February 11, 1901.

It will be observed that there is no pretense in this answer that the business of the company as a whole is not entirely profitable, and we do not concede that any such pretense or assertion would be of any merit as the contract found in the ordinance and voluntarily entered into by the company preceded the establishment of the works is the measure of the duty of the company, as well as its powers. It is not a case where by a subsequent regulation the municipal government is seeking to impose upon the company a regulation or rate that would result in taking its property without just compensation; but on the contrary is a case, in so far as the particular defense now being considered is concerned, where this company having solemnly agreed to furnish water through meters to provide consumers at a specified rate per annum have discovered that some of them (how many or who they are is not shown) take less water than pays for the service rendered to them, is seeking to make all who actually use less than $10.00 worth of water per year at the meter rate prescribed by the ordinance either use that much and pay for it, or pay that amount if they do not use it. Although the company can not and does not appeal to sentiment by presenting a condition of having mistakenly, though voluntarily, entered into a contract which is unprofitable as a whole, it still seeks to violate a plain feature of that contract as to many because some (and without stating who they are) do not use enough water to pay for the company's expense of collecting its bills. I can not see that there is any principle of law that can be invoked to sustain such action.

Injunction is the proper remedy:

*Young v. Wooten,* 104 Mass. 95.

*Louisville Gas Co. v. Dulaney and Alexander,* 36 L. R. A. 125.

It is well established that mandamus lies to compel the supply of gas or water by a gas or water company where

there has been a refusal to supply, such companies being quasi public corporations and the duty undertaken being in its nature public.

No tender is necessary in the case at bar, there being stlll a performance of the duty and no refusal to pay, nor any complaint by the company on that ground.

The case of *Louisville Gas Co. v. Dulaney and Alexander, supra,* is entirely analogous, and affirmatory of this one. The charter there provided that the company shall furnish illuminating gas to private consumers who may apply therefor, under reasonable rules and regulations to be prescribed by the company, at a price not to exceed $1.35 per 1000 cubic feet, less a discount of five cents (5c) per 1000 cubic feet to all persons including the city, except as to street lamps, paying their bills within five days after the same are due; and it was held by the Court of Appeals of Kentucky that the company could not change meter rent to small consumers in addition to the maximum charge per 1000 cubic feet for gas so fixed by the charter.

It will be observed that in the case at bar the company does not furnish meters, or connect premises with the street mains or furnish either material or labor for such connections.

Of course where the meaning of a contract is clear an erroneous construction of it by the parties will not control its effect. Lawson on Contracts, sec. 389, paragraph 7; *Railroad v. Trimball,* 3 Wallace, 367; and in our judgment the meaning of this ordinance upon the question in point is entirely clear and to the effect above stated. Conceding, however, for the sake of argument that the intent is doubtful from the terms of the ordinance, it is obvious that the manner in which the contract has been executed by the parties to it fixes its meaning and intent as we contend; and the rule in such cases is that such manner of execution by both parties or by one of the parties with the express or implied assent of the other is of great if not controlling influence. Lawson on Contracts, *supra; Camden, etc., R. Co. v. Lip-*

*pencott,* 45 N. J. L. 418; *Chicago v. Sheldon,* 9 Wall. 50; *People v. Murphy,* 119 Ill. 159; *Farrar v. Rowley,* 2 La. Ann. 475; *D'Aquin v. Barbour,* 4 La. Ann. 441; *Casey v. Pennoyer,* 6 La. Ann. 776; *Topliff v. Topliff,* 122 U. S. 121; *Mathews v. Danahy,* 26 Mo. App. 600; *Jennings v. Machine Co.,* 138 Mass. 594. Here the language and practical construction coincide.

The rule of construction in cases like this is not in favor of the company, but such contracts are construed with strictness as to them. *Freeport Water Co. v. Freeport,* 180 U. S. 587.

Again, though it is not essential to our case to so contend, yet the charge of $2.50 per quarter or of $10.00 per year, as a condition precedent to furnishing any water is not a reasonable regulation if the proviso to the ordinance was not in it. In *Rockland Water Co. v. Adams,* 84 Me. 472, the decision was that a regulation of a water company providing that takers of water shall be liable to pay rent for the whole year, whether they actually used it for that time or not, and to make payment yearly in advance without special agreement, is held to be unreasonable. "It casts," says the opinion, "upon the public who have occasion to use the water for a short time only, an unjust and unreasonable burden."

All of which is repectfully submitted.

Geo. P. Raney,<br>
<em>Solicitor for Appellants.</em>

REPLY BRIEF OF GEO. P. RANEY, SOLICITOR FOR APPELLANTS.

In the Supreme Court of Florida.<br>
June Term, A. D. 1903.

W. D. Wilson *et al.,* Appellants, v. Tallahassee Water Works Co., Appellee.

It will be observed that the "schedule" annexed to the ordinance is not paragraphed in the manner indicated by

VOL. 47, JANUARY TERM, 1904.     377

Wilson et al. v. Tallahassee W. W. Co.—Reply Brief for Appellants.

appellee's counsel on page 2 of his brief (see page 14 of transcript), but is as indicated in appellants' principal brief.

The "single spigot" does not constitute the "unit of service" contended for by appellee, as will appear from a careful consideration of the ordinance. It is only the "bath tub" rate that is an additional or incidental rate. Water closet, wash basin, and other rates are independent and substantive rates.

We can not see from the mere fact that the clause naming the meter rate follows immediately after the "hotels, mills, manufactories," etc., rate, that the meter rate is applicable only to "hotels, etc., and other large consumers." If it followed as a sub-head, instead of as an independent and substantive head, it might be so, but it does not.

It is said on page 5 of appellee's brief: "It could not have been its intention that any consumer, however few the uses he intended to put the water to, and however small the consumption required for his purposes, could demand of the company to be supplied by meter." "*Its*" must be understood to refer to the ordinance, and the parties to, and those to deal under, the contract therein contained. Suppose a new hotel had been started in Tallahassee, prior to the resolution of February 11th, 1901, (say in January, 1899), and the Water Company had connected with it through meters and not made any special rate, would not the meter rate have controlled the price of the water actually used by it, whether more or less? It seems to me that it would; and that it would do so now notwithstanding the resolution referred to. The Water Company was not ignorant of the necessity for examining meters, and would have prescribed a meter charge or made some other compensating regulation if it had not intended to abide the result of the pecuniary venture of meter rate service as offered by the ordinance.

It seems to me that the obvious effect or result of the argument of appellee's counsel ignores both the language

and meaning of the ordinance as it is written, and the practical construction which has been put upon it, and to set up an hitherto unknown rule of construing contracts according to financial results, instead of according to the language used, the subject-matter, and surrounding circumstances, or the practical construction by the parties where the language is doubtful in its meaning; and surely if there is any doubt here the trend of such doubt is against the appellee. A careful analysis of his entire brief will justify this judgment.

Why did the appellee during all this time conform its conduct to the construction claimed to be the only correct one? Common sense and common business practices would answer that it was because such was the law of the contract and the reciprocal rights and duties of all the parties affected by the contract. The only other answer is generosity upon the part of the appellee. No fraud upon the part of the appellants or any one is alleged.

The appellee has changed its mind. The ordinance shows that it believed the "meter rate" as a whole would be financially remunerative, and surely in the absence from the answer of all assertion to the contrary, nothing is more sure than that it, as a whole, has been financially remunerative; but the appellee's desires for gain have been strengthened, by the success of that scheme into a demand that each meter shall be financially remunerative, and yielding to the influence of such success it finds in uncertaintity of words which it has heretofore construed against its interests ground for establishing that which we have no evidence it ever thought of before.

The case of *Ladd v. Boston* calls for no notice, and that of *Habison v. Knoxville Water Co.* has not been seen by me, and is not in the State or my own library, and that of *Carney v. Chillicothe Water Company* is clearly distinguishable in that in it the language was as to all "annual water rates" to be found in the schedule, while here it is as to the

annual supply or use of water under any head or charge to be found in the schedule.

Respectfully submitted,        GEO. P. RANEY,
*Solicitor for Appellants.*

In the Supreme Court of Florida.
June Term, A. D. 1903.

W. D. Wilson *et al.,* Appellants, v. Tallahassee Waterworks
Co., Appellee.

There is in the case of *Harbison v. Knoxville Water Co.,* 53 S. W. Rep., cited by appellee, and which I had not had an opportunity to read till last night, nothing inconsistent with the contention of appellants here.  There a water company's rule that consumers shall pay three months in advance was held to be reasonable, where there is no limit upon the quantity of water he might use, but it is said in the opinion:  "We are not dealing with a case where the residence of the consumer is metered, and the exact quantity used by him can be measured.  In such cases the party pays for the water actually consumed by him at a scale of prices fixed by the company, assuming its charges to be reasonable."  There is, moreover, unlike the case at bar, no question there, of a conflict between the company's regulation and a guarantee made to consumers by a city ordinance granting rights to the company.  The other points decided by the case under discussion, as shown by the headnotes and opinion, require no notice.

I waive oral argument.        GEO. P. RANEY,
*Solicitor for Appellants.*

*Fred T. Myers* for appellee.

BRIEF OF COUNSEL FOR APPELLEE.

In the Supreme Court of Florida.

W. D. Wilson, Richard A. Whitfield *et al.,* Appellants, v.
Tallahassee Water Works Company, Appellee.

On February 11th, 1891, the Board of Directors of the Tallahassee Water Works Company adopted a regulation

providing that from the 1st day of April, 1901, no consumer, whose existing contract did not extend beyond that date, should be served by meter, at the established meter rate, unless such consumer should guarantee a quarterly consumption of at least one thousand cubic feet, or agree to pay a minimum price of $2.50 per quarter; and that all consumption over one thousand cubic feet should be at the established rate of twenty-five cents per one hundred cubic feet. The same regulation was to apply to customers whose existing contracts extended beyond the first day of April, beginning with the first day of the quarter succeeding the date of the termination of such contracts severally.

This regulation was adopted for the reasons stated in the preamble, that service by meter was only intended for large consumers, and the past experience of the Company had demonstrated that a large portion of its consumers served by meter had obtained such service at much less than the established rate for a single spigot, on account of the small quantity of water consumed, in some instances so small as hardly to pay the expense of the quarterly examination of the meter.

See Bill, Exhibit C.

The Water Works Company is operating its works under the provisions of an ordinance of the City of Tallahassee, adopted March 25th, 1889, the 9th section of this article provides, "That said Company, its successors and assigns, shall have the right to make reasonable rules and regulations for the government of private consumers in the uses of its waters, and to charge such rates for its use as it may from *time to time* establish: Provided, The rates charged per annum shall not exceed those named in the following schedule, to-wit:

Dwellings, single spigot for domestic use..........$12.00
Bath tub in addition..............................  8.00
Water closets.....................................  8.00
Wash basins.......................................  4.00

Urinals ...........................................  4.00
  *     *     *     *     *     *     *     *     *     *
Hotels, mills, manufactories and other large con-
    sumers by meter or special rates.
Meter rates, per 100 cubic feet.......................  .25

See Bill, Exhibit A.

The bill seeks in behalf of appellants, and all others in like situation who may become parties to the suit, to enjoin the said "Company, its agents and attorneys, from refusing to supply, and from abstaining from supplying water to such of appellants severally, and each and every of them, as shall continue to pay appellee for water supplied, at the rate of twenty-five cents per hundred cubic feet, as heretofore, through their respective meters," or, in other words, to enjoin the enforcement by the Company of the regulation adopted by its board of directors on February 11th, 1901, with reference to meter consumers.

The appellants rest their case on the contract between the City and the Company, as expressed in the ordinance above mentioned.

They expressly disclaim any direct contract between themselves and the Company by the following allegation of their bill:

"Your orators have no contract, nor has either of them any contract extended beyond April 1st, 1901, or even to such date."

Nor do they complain that the new regulation adopted by the Company with reference to meter consumers is an unreasonable one.

They plant themselves on the ordinance, and the alleged interpretation of it by the Company in its course of dealing with the appellants in serving them by meter, and charging only the established meter rates, without reference to the quantity of water consumed—whether great or small; by which action, they claim, it seems, that the Company is estopped from contending that the proper interpretation of

the ordinance is that the meter service was only intended for large consumers.

The interpretation placed on a contract, or, usage under the contract, cannot control its construction where its meaning is clear from the writing itself. "If the words or terms of a contract are equivocal, resort may be had to the circumstances under which the contract was executed, and to the contemporaneous construction given to the contract by the parties, as evidenced by possession or similar acts. The subsequent acts are admitted to show how the parties understood their contract, and are a practical construction of it."

1st. Beach on Contract, sec. 721.

But where the contract is free from ambiguity, and its meaning is clear in the eye of the law, such mode of construction is inadmissible.

1st. Beach on Contracts, sec. 722.

"Where the terms of a contract are plain, usage, even under that very contract, cannot be permitted to affect materially the construction to be placed upon it; but when it is ambiguous, usage for a long time may influence the judgment of the court, by showing how it was understood by the original parties."

2nd. Parsons on Contract, mar. p. 547.

Let us, therefore, look at the ordinance, and see if its meaning can be readily ascertained from its language without appealing to extraneous circumstances to aid in its construction.

It is clear from the ordinance that the unit of service on the part of the Company is a single spigot, or one opening. For a single spigot for domestic use only, the Company is authorized to charge not exceeding twelve dollars per year. Every householder seeking water service would necessarily require it for domestic purposes; the other uses, such as bath tub, water closets, etc., would be additional, and the Company is allowed to charge an additional sum per year for each of these uses, less, however, in pro-

portion than is allowed for the one original and principal opening for domestic purposes. Thus nearly all the uses that the private citizen, householder, or head of a family, would likely desire to put the water to, to add to the convenience and comfort of himself and family; and also the uses for certain ordinary and usual businesses, trades, and vocations are specifically provided for in the schedule. The rates thus fixed by the ordinance are maximum and annual rates.

After enumerating these, there follows certain businesses, which, in their very nature, would require a large consumption of water, and a number of different openings, such as hotels, mills, and manufactories, and yet these, not being all of the same character, size, or capacity, would require water, some in greater, and some in less quantities, for their several purposes; and it is provided that these, and other *large consumers,* shall be charged by measure, and that the measured rate shall be twenty-five cents per hundred cubic feet, or, it may be, by a special flat rate to be the subject of private agreement between the Company and the consumer.

It is perfectly clear from the position that the clause naming the meter rate occupies in the ordinance, following, as it does, immediately, the words "hotels, mills, manufactories and other large consumers, by meter or special rate," the ordinance intended that that rate should apply only to the cases just mentioned.

It could not have been its intention that any consumer, however few the uses he intended to put the water to, and howsoever small the consumption required for his purposes, could demand of the Company to be supplied by meter.

When the single spigot for domestic use is put in, or other fixture for specific purposes, where a flat rate is established, the work of the Company thereafter is solely to make out a bill for, and collect the fixed amount of rental, which can be, and is done in advance, thereby making the rental absolutely secure. But in the case of meter service, an em-

ployee of the Company must visit the meter quarterly, and take and keep a record of its readings, which imposes upon the Company additional labor and expense, and greater risk, because the rental cannot be collected until the service is performed. Besides, the consumer, when a meter is put in, is not limited as to the uses to which he may apply the water, and he may have as many openings as he chooses, and use the water, or desist from using it, at will, and yet all the while have the benefit of the service, and the protection and convenience afforded thereby—never having his supply cut off; while the flat rate consumer must pay the established rental, whether he uses much or little, as long as he maintains connection with the Company's mains. He only relieves himself from the obligation to pay by having the service discontinued by cutting off the supply at the service, or street cock, and when cut off he loses the protection otherwise afforded.

It could never have been the intention of the parties to the contract that the meter service could be had at so much less price than the flat rate service as appears from the consumption of the appellants as set forth in the answer.

There is nothing in the ordinance which would compel the Company to supply the water by meter, except in the cases named of hotels, mills, manufactories, and other large consumers; and any party desiring to be served by meter would have to show as a pre-requisite to insisting upon it as a legal duty of the Company, that he came within one of the specially named classes, or that his intended use of the water would be such as to bring him within the general class of large consumers.

The appellee, in its answer, admits that up to the time of the adoption of the resolution of February 11th, 1901, it never claimed the right of charging the citizens, residents, and inhabitants of said city, who have used water through meters, a greater charge than twenty-five cents per one hundred cubic feet, nor has appellee ever made a greater charge for such service; nor does it now claim that, where

meter service is given to large consumers, it has the right to charge more than the rate named in the ordinance afore-said; but insists that, under the terms of the ordinance appellee has always had the right to refuse, at any time, to give a meter service to any one, unless there was to be a sufficient consumption of water by such customer to class him as a large consumer, and that appellee has the right, under the ordinance, to adopt and enforce a regulation such as is contained in the resolution of February the 11th, 1901.

Appellee in its answer further says, that conceding the meter. service to appellants, and others similarly situated, was largely experimental, and with the expectation that as such customers became accustomed to the free uses of water their consumption thereof would greatly increase, as such consumers would avail themselves of a greater variety of uses of such water than if taken under the flat rate provided by such ordinance, as the cost would comparatively not be so great.

The answer further shows how this expectation has failed of realization. It has been demonstrated from actual experience that of the 214 customers served by meter the average consumption during the year 1900 of fifty-one of them was less than one dollar per quarter, of sixty-one of them was from one dollar to two dollars per quarter, and of twenty-one of them was from two dollars to two fifty per quarter; and but eighty-one of them averaged more than two dollars and a half per quarter. That there are a total of 333 consumers, and of these, 214 (or about two-thirds) are served by meter. Of the 214 meter customers about one-fourth of them pay less than one-third, and more than half of them pay from one-third to five-sixths of the price paid per month by a flat rate consumer for a single spigot for domestic use.

The answer further shows that of the 33 new custom-ers obtained during the year 1899, 21 (or about two-thirds of them) have requested and obtained service by meter; and that the tendency has been, among those who have

47 Fla.—13

started with a flat rate service, to change to the meter service. The answer further shows that R. A. Whitfield is served by four separate spigots; that D. B. Meginnis, Jr., is served by three; that Oscar VanBrunt is served by two; that M. F. Papy is served by two; that J. D. Perkins is served by three; that Jessie Meginniss is served by two; and that the First National Bank is served by four.

The answer shows that W. D. Wilson's average consumption for three years (one spigot) has been less than twenty cents a month, as against one dollar per month for flat rate consumers for the same service; and that Jessie Meginniss' average consumption per month for five years has been eleven and one-third cents, for a service of one spigot in the yard and a bath tub, which at flat rate price would have been one dollar sixty-six and two-thirds cents per month; and that the First National Bank has averaged thirty-two and one-third cents per month for the past six years, and that its service consists of a washstand, water closet, and two spigots, which, at flat rate prices, would be two dollars and a half per month.

Now the appellee contends that it has the right and power under the ordinance, to establish, within reasonable limits, what amount of consumption will entitle a customer to be classed as a large consumer. That as a pre-requisite to serving by meter, it can require a guarantee of a customer that his consumption shall be up to the limit thus established, in order to get the benefit of the meter rate.

The Court will observe that the regulation of February 11th, 1901, establishes this minimum, at one thousand cubic feet per quarter, which, at twenty-five cents per hundred cubic feet, makes the minimum price two dollars and a half per quarter, or less than the flat rate price per single spigot; and yet the consumer has the privilege of as many varieties of use, and as many openings as he, chooses;—the excess over one thousand cubic feet to be paid for at the established rate of twenty-five cents per hundred cubic feet.

This certainly is a reasonable regulation so far as the consumer is concerned, and a necessary one for the company, in view of the tendency of customers to seek the meter service, and the disposition of those customers, in the light of experience, to use the water so sparingly as not to average the permitted price per single spigot.

The contention of the appellants, that the practice, or usage, of defendant heretofore, in not insisting upon a minimum of consumption, is a practical construction of the contract which estops it now from doing so, is untenable. As heretofore shown, that principle can only be invoked where the contract itself is ambiguous. But the contract under consideration is intended to be elastic so far as the price is concerned within the maximum limits established. It is not fixed and determinate otherwise than in establishing this maximum. The fact that the Company has furnished customers at one price for any period under the ordinance does not preclude a change of that price within the maximum limit, for the ordinance expressly authorizes the Company to charge such rates as it may from *time to time* establish. It contemplates change of price to meet altered conditions. If the Company had supplied flat rate customers from the date of the inauguration of its water works system at six dollars per annum for a single spigot for domestic use, and afterwards had raised it to twelve dollars per annum, the consumer could have had no legal ground of complaint under the ordinance. The fact that he had paid for putting in his connections and piping his premises would not alter the situation. "The fact that a party who is using a meter when he put in fixtures does not affect his rights with respect to its removal when he had no contract for its continuance."

*Ladd v. City of Boston*, 40 L. R. A. 171.

The Company has a right to insist upon a written contract between itself and its customers that is reasonable in its terms and within the limitations of the ordinance; and to decline to furnish water to any one who refuses to enter

into such contract. "While a public water company is a *quasi* public corporation, and bound to supply all persons, without discrimination, such companies may nevertheless adopt reasonable rules for the furtherance of their business, which may be enforced even to the extent of denying water to those who refuse to comply with them."

*Habison v. Knoxville Water Company*, 53 S. W. Rep. 993.

"A private incorporated company will not be enjoined from cutting off its water supply, in accordance with its rules, in order to enforce payment of its water rent."

*Smith v. Scranton Gas & Water Company*, 5 Lack. Leg. N. 235.

After a diligent search for some case with facts analogous to the one under discussion the only one that I have been able to find in any way resembling it is the case of *Carney v. Chillicothe Water Company*, 76 Mo. App. 532. In this case the ordinance established the annual prices to be paid for water, basing it on the uses it was to be put to; and also provided a meter rate scaled in multiples of one hundred gallons, which was taken as the basis. The meter price was for quantities of from 100 to 500 gallons per hundred gallons 05 cts., from 500 to 1500 gallons per hundred gallons 04 cts., from 1500 to 2000 gallons, per hundred gallons 03½ cts. As the price diminished as the consumption increased in certain proportions, it was contended by the plaintiff that the words "annual rates" in the contract applied to the meter rates as well as the flat rates, and that the calculation of the price must be based on the annual consumption; but it was held by the court that the words "annual rates" did not apply to the measured rates, and that the proper construction of the contract was that the meter price was based upon daily consumption, and that the fair way to arrive at it was to read the meter each month, and get the average daily consumption by dividing the monthly reading by the number of days in the month. After deciding the above point the court

proceeded to say: "The remaining difference between the parties consists in the question whether the appellee has the right under the contract to exact of the patrons using a meter a minimum charge of seventy-five cents per month though they did not consume any quantity of water. The trial court held that it did.

"The contract contains no rate or provision for a charge where the quantity consumed is less than one hundred gallons daily. The appellee then being ungoverned by contract might reasonably charge for the use of a less quantity a proportionate price to one hundred gallons being the smallest quantity provided for. Neither does the contract provide for a charge for inspecting the meter, etc., when the meter is turned on but none used. The defendant then apart from the contract had a right to fix a fair and reasonable minimum charge to compensate it for necessary expense and service in inspecting the meter, and as just stated for water used in a quantity not provided for in the contract. Seventy-five cents per month was found by the court to be a reasonable charge for the meter service. Add to that sum in cases where the consumption of water is less than provided by the contract a proportionate price therefor, we have, it seems to us, a result fair and just to all parties concerned. It will be of course observed that when the consumer uses an average of 100 gallons daily, or more, the schedule price places it above the meter charge (or as it is sometimes called the minimum charge for water service), and no question of a meter charge would arise."

This decision at least suggests the argument made above that when a patron takes water by meter he gets the service, so far as the Company is concerned, whether he avails himself of it or not; and that the fact that the Company is prepared and ready at all times, as long as the connection is maintained, to supply water in such quantities as the patron may require for his uses, and is compelled, at stated periods, to examine the meter, to ascertain whether the patron has availed himself of the service, and, if so,

to what extent, is sufficient in law to justify "a minimum charge for water service."

This *service* is something of value, for the preparedness and readiness to supply the water to these meter consumers, as it may be required, is an element that must necessarily enter into consideration when determining the state of efficiency in which the plant must constantly be maintained. This service feature, in the case of flat rate consumers, is covered by the greater price charged for the first opening than for the additional openings that may be required for other uses than those strictly of a domestic character.

The contract in the present case (the ordinance) establishes no measure to determine what quantity of water must be consumed to constitute one a large consumer; but certainly the quantity in such case must be greater than the average, and surely more than the standard established for the ordinary consumer using only one opening, and that strictly for domestic purposes. The minimum rate to be established by the resolution of February 11th, 1901, is less than this standard; and the patron is entitled to use up to one thousand cubic feet (or 7,500 gallons) per quarter for this minimum price of two dollars and fifty cents, (or at the rate of three and one-third cents per hundred gallons); and if he exceeds that, he pays at meter rates for the excess actually used.

This certainly is a fair and reasonable arrangement; and there is nothing in the contract which denies this right to the Company; and nothing in the past relations between appellants and appellee which precludes it.

Consequently, we contend that there are no grounds upon which appellants should be granted an injunction to restrain the Company from putting this regulation into operation.                     FRED T. MYERS,

        Examine case            *Counsel for Appellee.*

 *Smith v. Birmingham Waterworks Co.,* 16 So. Rep. 123.

MAXWELL, J.—The appellee is a corporation organized under the general laws of this State for the purpose of supplying water to the municipality and citizens of Tallahassee. The 9th section of the city ordinance under which it operates is as follows:   Section 9.   That said company, its successors and assigns, shall have the right to make reasonable rules and regulations for the government of private consumers in the use of its water and to charge such rate for its use as it may from time to time establish:   Provided, the rates charged per annum shall not exceed those named in the following schedule, to-wit:

Dwellings, single spigot for domestic use only......$12.00
Bath tub in addition..............................   8.00
Water closets.....................................   8.00
Wash basins.......................................   4.00
x  x  x  x........................................   x.xx
x  x  x  x........................................   x.xx
Hotels, mills, manufactories, and other large consumers
      by meter or special rates.
Meter rates per 100 cubic feet....................    .25
Building, laying brick per thousand...............    .10
Plastering per 100 yards..........................    .50

Under this ordinance water was supplied to all consumers having meters at the rate of 25 cents per 100 cubic feet, without reference to the amount consumed, until April 1st, 1901, at which time the water company put into effect a resolution adopted by it in February 11th, 1901, which provided that all consumers using meters and paying meter rates should pay a minimum rate of $2.50 a quarter, and for water used in excess of 1000 feet at the rate of 25 cents per 100 feet as before.   One hundred and thirty-three of the two hundred and fourteen consumers supplied by meter used less than one thousand feet of water per quarter, and this bill was filed by some of these to restrain the company from putting the resolution into effect.   The injunction prayed for was denied and appeal was taken to this court.

Does the ordinance as above quoted restrain the company from charging more than the meter rate therein desig-

nated to any consumer supplied by meter, or is its restrictive force confined to the rates for hotels, mills, manufactories and other large consumers? As we construe it the ordinance first fixes a maximum flat rate, as it is called, for the ordinary consumer based upon the fixtures used and the business for which the supply is intended. Then, recognizing that in certain cases such a basis of charge would operate harshly because the great number of openings of fixtures required would be out of proportion to the amount of water consumed, or because the great quantity of water consumed would be out of proportion to the number of openings through which it was supplied, or by reason of its volume would entitle the consumer to a special rate, the provision was added for meter and special rates as follows:

> Hotels, mills, manufactories, and other large consumers by meter or special rates.
> Meter rates per 100 cubic feet.....................  .25

This provision for a meter rate was, we think, obviously made with the class of consumers in view mentioned in immediate connection with it, and who had just been required to pay on that basis, and who without this limitation would be without protection from the ordinance. Whether the purpose was also to restrict to that class the right to demand meter service (*Ladd v. Boston,* 170 Mass. 332, 40 L. R. A. 171) we need not consider as the company is not endeavoring to enforce such a right. But we think the limitation fixed by the ordinance upon the rate to be charged for meter service had reference to such consumers only, and that if meter service is supplied to other and small consumers, the measure of the right to charge for such service must be found elsewhere. Not being included within those cases for which rates are prescribed, the company may fix rates (*Carney v. Chillicothe Water & Light Company,* 76 Mo. App. 532) ; and the fixing of a minimum charge for service to small consumers in excess of the ordinary price of the quantity of water consumed by them is not in itself unreasonable. *State ex rel. Weise v.*

*Sedalia Gas Light Company,* 34 Mo. App. 501. See, also, *Louisville Gas Co. v. Delaney,* —Ky.—; 36 L. R. A. 125.

It is contended that the action of the water company in charging 25 cents per 100 feet to small consumers prior to the adoption of the resolution fixing a minimum charge was a practical construction given the ordinance, by it, consonant with that now insisted upon by the appellants. The company explains its action by saying its purpose in permitting to small consumers meter service at this low rate was to encourage an increase in the variety of uses made of the water by such consumers, and a more liberal consumption of it, and that in this it has been disappointed. We do not regard the proper construction of the ordinance in question one of such doubt that this action by the company should be regarded as an interpretation of its maximum right of charge. The company in supplying water to a small consumer through a meter had the right to charge any reasonable rate therefor, and the temporary and experimental adoption of one rate does not debar it from the right to increase this to another which is reasonable, when experience has demonstrated the necessity for the change.

The city has, of course, the right at any time to restrain the rates within bounds which are reasonable (*City of Tampa v. Tampa Water Works Co.,* 45 Fla. 600, 34 South. Rep. 631), but there is no contention here that it has done so unless in the section of the ordinance above quoted. Nor is there any allegation in the bill that the resolution adopted by the company imposes rates which are in fact excessive and unreasonable. If any inference upon this point may be drawn from the record it is in support of the reasonable nature of the rule adopted, as the minimum charge there fixed is in the case of every complainant before us not only much less than he would be required to pay upon what is termed the flat rate basis, but less than the charge made upon that basis for a single spigot for domestic use.

The order of the Circuit Court denying the injunction is affirmed.

HOCKER, J., CALL, Circuit Judge, and BULLOCK, Circuit Judge, concur.

TAYLOR, C. J., and CARTER, SHACKLEFORD and COCKRELL, JJ., being disqualified, took no part in the decision of this case.