Ross v. The Kansas City, St. Joseph & Council Bluffs Railroad Company, *Appellant.*

Division One, June 20, 1892.

1. **Statute, Interpretation of by Executive Officers.** Where an interpretation has been placed upon a statute by the executive

officers of the state charged with the duty of enforcing it, and said interpretation has been acted upon by them long enough to become a rule of the department, it will not be disturbed, unless it is plainly against the law.

2. ————: CARLOAD: RAILROAD COMMISSIONERS. The rule applied to the action of the state board of railroad commissioners in construing a "carload" of cordwood, as used in Revised Statutes, 1879, section 833, to be ten tons, instead of all a car can safely carry.

3. Statute, Construction of. The general purpose and object of a statute is never to be overlooked in its construction and application.

*Appeal from Buchanan Circuit Court.*—HON. HENRY M. RAMEY, Judge.

REVERSED.

*C. A. Mosman* for appellant.

(1) The construction placed upon the language of the statute by the state railroad commissioners and acquiesced in by all the departments of the state government up to the present time, thirteen years, should be adopted by the court. *Edwards v. Darby*, 12 Wheat. 106; *Packard v. Richardson*, 17 Mass. 143. Such contemporaneous practical construction has always been regarded by the government as equivalent to positive law. *Bruce v. Schuyler*, 4 Gilm. 221; *Brown v. United States*, 113 U. S. 570; *The Laura*, 114 U. S. 415; *Peabody v. Stark*, 16 Wall. 243; *Mathews v. Shores*, 24 Ill. 29; *United States v. Gilmore*, 8 Wall. 330; *Rogers v. Goodwin*, 2 Mass. 476; *Martin v. Hunter*, 1 Wheat. 350; *Cohens v. Virginia*, 6 Wheat. 417; *Leonard v. Railroad*, 2 Inter St. Com. Rep. 599. (2) The railroad commissioners, in recognizing ten tons or twenty thousand pounds as a carload, only put in words the precise meaning the legislature intended to convey by the use of the word carload. (3) Before one can be adjudged guilty of

violating the law in question, it must be shown that he knew he was charging rates prohibited by law. *United States v. Highleyman*, 22 Int. Rev. Rec. 138; *Bradford v. Floyd*, 80 Mo. 207. A citizen is not criminally responsible for the acts of his agent occurring without his knowledge. *State v. Baker*, 71 Mo. 475; *State v. Parsons*, 12 Mo. App. 205. (4) Again, the intent, the motive, is the very essence of the offense. It will not do to claim that a citizen, who in good faith follows the instructions of the officers appointed to regulate his business, believing such regulations to be the law, can be actuated by an intent to violate the law. *State v. McAdoo*, 80 Mo. 219; *Smith v. Densmoor*, 42 Mo. 231; *Brown v. Carter*, 52 Mo. 48; *United States v. Three Trunks*, 8 Fed. Rep. 583; *United States v. Purissima Conception*, 24 Fed. Rep. 358; *Elliott v. Railroad*, 99 U. S. 573; *Parrish v. Railroad*, 63 Mo. 286.

*James W. Boyd* and *Benjamin Phillip* for respondent.

(1) Plaintiff can recover even though defendant did not know that it was charging rates prohibited by law. *United States v. Fourteen Packages*, Gilpin, 235, 249; *The Ann*, 1 Gallis. 62; Bishop on Criminal Law [7 Ed.] sec. 296, p. 176. Intent to violate the law is never necessary, even in a felony. Article on Criminal Intent, 29 Cent. Law Jour. 375. It is not a question of knowledge, motive or intent to violate the law. If appellant charged and received a greater or higher rate of freight for carrying said wood than the law allowed, then appellant is liable for the damages fixed by the statute. *Fuller v. Railroad*, 31 Iowa, 187; *Burkholder v. Trust Co.*, 82 Mo. 577; *Humes v. Railroad*, 82 Mo. 221. (2) A carload, as used in the statute, means and was intended to mean what is

usually loaded and can be safely carried in a car. A carload is a car loaded to its reasonable capacity, irrespective of what constitutes the bulk. *Flanagan v. Demarest*, 3 Rob. (N. Y.) 182; *Sargent v. Reed*, 2 Str. 1228; *Kreiger v. Blanck*, L. R. 5 Ex. 183; *Borrowman v. Drayton*, 2 Ex. Div. 19. Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature must have intended to mean what they plainly expressed. *State v. Fisher*, 2 Cranch, 399. (3) And in construing a statute it is to be construed literally if that construction is not contrary to the evident intent of the legislature. "One who contends that a section of an act must not be read literally must be able to show one of two things: Either that there is some other section which cuts down or expands its meaning, or else that the section itself is repugnant to the general purview." *Hicks v. Jamison*, 10 Mo. App. 35; *Nuth v. Tamplin*, L. R. 8 Q. B. Div. 254. (4) Where words having a technical as well as popular meaning are used in a statute, the courts will accord to them their popular signification, unless the very nature of the subject indicates, or the context suggests, that they are used in their technical sense. *Weill v. Kenfield*, 54 Cal. 111; *People v. Tighe*, 5 Hun, 25; *Opinion of Justices*, 7 Mass. 523; *Mallan v. May*, 13 M. & W. 511, 517; Sutherland on Statutory Construction, sec. 250. (5) The whole history of the legislation in this state regulating the charges of railroad companies shows conclusively that the legislature did not intend that twenty thousand pounds should constitute a carload. Laws, 1864, sec. 31, ch. 70, entitled "Of Corporations;" 1 Wagner's Statutes, 1872, sec. 31, p. 308; Laws, 1873–1877 (Myer's Supplement), secs. 124, 125, p. 86; Laws, 1881, secs. 1, 2, p. 83; Laws, 1887, secs. 2, 3, p. 106; Revised Statutes, 1889, secs. 2565, 2598, 2674, 2675,

2684, 2692; Laws, 1891, sec. 2672a, p. 80.   (6)   More-
over, it will be admitted, we suppose, that in the
absence of any custom fixing what constitutes a car-
load a carload would be what is usually loaded and
can be safely carried in a car.   In this case there is
not, from the beginning to the end of the record, a
scintilla of evidence as to any custom regarding what
is a carload.   Where there is no evidence tending to
prove that the words of a statute were used in any
other than their plain and popular sense, it is the duty
of the court to construe it according to its terms.
*Fruin v. Railroad*, 89 Mo. 397.

BLACK, J.—The plaintiffs, Ross and Todd, brought
this suit to recover the statutory penalty of three times
the amount of alleged overcharges paid by them to
defendant for hauling several hundred cords of wood to
St. Joseph, between the first day of July, 1883, and
March 25, 1886.

The petition contained two hundred and thirty-
four counts.   Plaintiffs withdrew or took a nonsuit as
to some fifty odd counts, and recovered judgment on
the others, and the defendant appealed.

The proof shows that the cordwood was all
shipped from points on the defendant's road to St.
Joseph, the distance in all cases being less than twenty-
five miles.   In some instances the wood was not shipped
from any regular station, but from points on the road
where it had been piled with the knowledge and consent
of the defendant.   In such cases the defendant sent out
a special train and made a special charge of $25 for
"engine services" in addition to the usual freight
charges.   As the trial court, by the instructions given,
excluded these special charges in computing the over-
charges, it is not necessary to give them any further
notice.

The defendant made out from time to time what are called "expense bills" and presented them to the plaintiffs for payment, and they paid the charges thus made. Each of these bills represents a car, and the charges are extended according to the weight of the wood, the price charged for carriage ranging from three and one-half to four cents per one hundred pounds. One of these bills will serve as a sample for all. It reads: "Weight, twenty-eight hundred; rate, three hundred and seventy-five; total to pay, $10.50."

. The defendant put in evidence portions of the fourth annual report of the railroad commissioners of the state of Missouri for the year 1878, addressed to the general assembly. In this report the commissioners say: "The laws of Missouri recognize two thousand pounds as a ton, but in regard to some articles, particularly iron, custom allowed twenty-two hundred and forty pounds to the ton. Custom has established ten tons or twenty thousand pounds as a carload, but . in many freights, especially lumber, custom allows twelve tons or twenty-four thousand pounds to the car. The weight of lumber being estimated from the number of feet. To avoid confusion, therefore, the commissioners published, in connection with their table of classification, that they recognize two thousand pounds as a legal ton and ten tons as a carload. See appendix C and D."

The part of "appendix C" read in evidence is in these words:

"Classification of freights established by railroad commissioners of Missouri.

"This classification to be in force on all the railroads in Missouri from and after July 10, 1878.

"Explanations: The classes are first, second, third, fourth, D, E, F, G, H, I and J, and the expression

1 1-2, D and 3x1 mean one and a half times the first, double first and three times first class.

"The commissioners recognize two thousand pounds as a legal ton and ten tons a carload."

The defendant insists that it had the right and was in duty bound to make its charges in accordance with the construction placed upon the law by the railroad commissioners, fixing ten tons or twenty thousand pounds as a carload. If correct in this contention, then this action must fail, for the amount charged did not in any case exceed $8 per twenty thousand pounds. The plaintiff insists that when the law speaks of a carload it means all the wood hauled in one car, and hence the defendant was guilty of making overcharges.

The act of 1875, which provides for the appointment of a board of railroad commissioners, divides freights transported into four *general* classes "to be designated first, second, third and fourth classes, and into *special* classes to be designated as classes D, E, F, G, H, I and J." Revised Statutes, 1879, sec. 833. The statute does not define what articles shall be included in these general classes, but it is left to the commissioners to make the classification. The statute, however, declares what shall constitute special classes D, E, G and H, and it specifies some of the articles which shall go into special classes I and J. It also fixes the maximum rate of charges upon the special classes. Class D comprises grain in carloads, and the maximum rate is six cents per one hundred pounds for the first twenty-five miles. Class E comprises flour in lots of fifty barrels or more, and lime in lots of twenty-four barrels or more, and the highest charge allowed is twelve cents per barrel for the first twenty-five miles. Class H comprises live stock, and the maximum rate is $10 per carload. "Class J shall comprise coal, brick, sand, stone, railroad ties and cordwood, and all heavy

fourth class articles, in carloads," and it is provided in respect of rates: "Class J, not exceeding $8 per carload for the first twenty-five miles," etc. As the statute itself, and not the commissioners, places cord-wood in class J and fixes the maximum rate at $8 per carload for the first 25 miles, the present case resolves itself into the question as to what is meant by a "carload" of cordwood.

It is to be observed in the first place that the statute deals with the movement of the commerce of the country, and must have accorded to it a reasonable and practical construction in the light of usages existing at the date of the enactment. "A statute applicable to a large trade or business should, if possible, be construed, not according to the strictest and nicest interpretation of the language, but according to a reasonable and business interpretation of it, with regard to the trade or business with which it is dealing." Endlich on the Interpretation of Statutes, sec. 83.

Again, where such a statute as this has been interpreted by those executive officers whose duty it is to enforce it, and their construction has been acted upon for any considerable time, due regard should be paid to such construction. While the rulings of such officers are not conclusive upon the courts, still their construction of the law is entitled to weight, especially where there is doubt as to the meaning of the law. Says the author just cited, after speaking of the deference paid to the practice in lower courts, "But of almost equal dignity is the practical construction put upon an act by the governmental officers particularly charged with its execution, especially where so long continued as to have grown into a rule of departmental practice. Thus the construction of a statute adopted and acted upon, by the executive, in the execution of his duty to give effect to the laws, or by the secretary of the treasury, or

the construction of a general insurance law of a state by its attorney general and other officers required to act under it, will, in cases of doubt and ambiguity  *  *  * be adopted by the courts, or, at least, not disregarded by them, except for cogent reasons." Endlich on Interpretation of Statutes, sec. 360; *Union Ins. Co. v. Hoge*, 21 How. 35.

Now, it must be conceded that a "carload of wood" is a very indefinite expression, and especially so in view of the fact that there is no uniformity whatever in the size or strength of cars. One car will carry only five tons while another can safely carry twenty tons. If a carload means, for the purposes of making transportation charges, the amount that the car can reasonably and safely carry, as the plaintiff insists, then the door is opened wide for favoritism and discrimination. The favorite shippers will get the large cars, and the less fortunate the small ones. This is exactly one of the things which the law, in its general scope, seeks to prohibit. The general object and purpose of a statute is never to be overlooked in its construction and application. To prevent discrimination and bring about equality and uniformity of rates, the commissioners have power and it is made their duty to classify freights, except where the statute places named articles in special classes. In promulgating the classification made by them in obedience to law, they held and ruled that ten tons should constitute a carload, and this ruling they made in view of what they understood to be the prevailing usage and the object and purpose of the law. There is, it is true, no evidence of a custom to count ten tons as a carload in this record save the statement made by the commissioners in their report. Concede that this statement does not establish the existence of such a custom, still the report does show that they gave due consideration to what they under-

stood to be an established usage. They promulgated their ruling in 1878, at least four years before any of the charges now in question were made. They reported their construction of the law to the general assembly late in that year, and that body ordered the report and the schedule made a part thereof printed, and thus the ruling was sent broadcast over the state for a guide, both to shippers and carriers.

Thereafter, and in 1881, the legislature passed a law requiring railroad companies to furnish double-decked cars for the shipment of sheep, and gave shippers the right to load both decks with sheep to the aggregate extent of twenty thousand pounds, and made it obligatory upon the carrier to transport the sheep as one carload. This act is in entire accord with the ruling of the commissioners, and not a disapproval of such ruling as counsel for respondent insists.

We think the construction given to the law by the commissioners as to what constitutes a carload is reasonable and just, and ought not to be disturbed.

On behalf of the respondents it is said the railroad commissioners have and had no power conferred upon them to declare what shall be the size or capacity of a freight car, or what shall constitute a carload. We do not say they have or had such powers. What we say is this, that they are executive officers charged with the special duty of enforcing this act of 1875, and the amendments thereto; that they have, in the proper discharge of their duties, held that ten tons constitute a carload; that interpretation has been acted upon long enough to become a rule in their department, and should not be disturbed, unless plainly against the law, and we think it is not. We believe it to be a fair and just construction of the statute—just alike to the shipper and the carrier.

Other arguments are made in behalf of the respondents in opposition to the conclusion here reached, but we do not regard them as sufficient to change or modify what has been said. Accordingly, the judgment is reversed. All concur.