EDWARD CARNEY et al., Appellants, v. CHILLICOTHE WATER & LIGHT COMPANY, Respondent.

Kansas City Court of Appeals, November 7, 1898.

1. Contracts: CONSTRUCTION: WATER RATES. In a contract between a city and a water company a stipulation setting forth annual water rates will be controlled by the attached schedule prescribing the prices per quantity as measured by meters.

2. ——: ——: ——: PAROL EVIDENCE. Where the contract itself is ambiguous the court may resort to parol testimony to aid in ascertaining the intent of the parties; and it is held that on the schedule in the contract for water rates the price per meter was to be determined by the whole measurement for a month divided by the number of days in each month to find the daily average and not by the total quantity consumed during the year.

3. ——: ——: ——: METER CHARGE. Where a contract for water rates has no charge for meter inspection the company may fix a reasonable charge for such inspection and also for water used in a quantity not provided for by the contract.

*Appeal from the Livingston Circuit Court.*—HON. J. W. ALEXANDER, Special Judge.

AFFIRMED.

STATEMENT BY ELLISON, J.

The following is that portion of the contract involved in the case:

"*Ninth.* The said Comegys & Lewis, their assigns and successors, further agree to furnish water of the

Carney v. Chillicothe Water & Light Co.

quality hereinbefore set out for domestic and manufacturing purposes at prices not exceeding the following schedule of annual water rates, and will furnish water to the railroads in the city of Chillicothe, Missouri, at the average rates of any five cities similarly situated in the state of Missouri:

METER RATES.

| | |
|---|---|
| 100 gallons to 500, per 100 gallons......................$ | .05 |
| 500 gallons to 1,500, per 100 gallons ........... ....... | .04 |
| 1,500 gallons to 3,000, per 100 gallons................. | .03 1-2 |
| 3,000 gallons to 5,000, per 100 gallons................. | .03 |
| 5,000 gallons to 10,000, per 100 gallons............ .... | .02 1-2 |
| 10,000 gallons or more, per 100 gallons................ | .02 |
| Hydraulic elevators and motors, per 100 gallons.. ..... | .02 |
| Banks, one basin..... ............ ................. | 8.00 |
| Bakery, average daily use, each barrel of flour......... | 4.00 |
| Barber shops, first chair .... ......................... | 5.00 |
| Each additional chair.................................. | 2.75 |
| Bath, private, each tub. ............................. | 4.00 |
| Bath, hotel, boarding house, each tub............... .. | 8.00 |
| Bath, public. ..... .. .. ........ ...... .......... | 12.00 |
| Billiard saloons, each table........................... | 3.00 |
| Boarding houses, each room ...... .... ........ .. . | 1.50 |
| Bookbinding, per hand ..............................₁... | 1.00 |
| Brick work, per M. laid..................... .. | .10 |
| Brick yard, each table or gang per season.............. | 20.00 |
| Butcher shops.. ................................... | 8.00 |
| Candy manufactures.......... ...................... | 15-30.00 |
| Churches ......................................·....... | free |
| City offices and hose house............................ | free |
| Colleges and schools, male and female, per M. gallons... | .15 |
| Cigar manufacturers, per hand ....................... | 1.50 |
| Confectioners.................... .. ................. | 8-30.00 |
| Cows, each.......................................... | 1.50 |
| Creamery and cannery, per M. gallons. ............... | .20 |
| Distillers, each barrel distilled .... .................. | .10 |
| Dyeing and tanning.................................. | 8-30.00 |
| Forge, first fire .. ........... ..................... | 4.00 |
| Each additional fire ...................... .......... | 2.50 |
| Fountain, 1-8 inch jet........... ... .............. | 12.00 |
| Each additional 1-8 inch jet............. ............ | 8.00 |
| Halls and theatres ................................ ... | 8-30.00 |

Carney v. Chillicothe Water & Light Co.

| | |
|---|---|
| Horse, including carriage washing | 2.00 |
| Hotel, per room | 1.50 |
| Ice cream saloon | 8-30.00 |
| Laundry | 8-100.00 |
| Office and sleeping rooms | 3-8.00 |
| Oyster saloon | 8-30.00 |
| Printing office | special |
| Photograph galleries | 10-30.00 |
| Plastering, per square yard | .00 1-4 |
| Residence, one family 1 to 6 rooms | 6.00 |
| Each additional room | 1.00 |
| Restaurants | 1-30.00 |
| Schools, public | free |
| Sprinkling streets in front of business houses first year | free |
| After first year, per front foot | .12 1-2 |
| Sprinkling gardens, lawns, etc., first 50 square yards per square yard | .04 |
| Each additional square yard | .02 |
| In sprinkling, hose is limited to 3-4 inch nozzle to 1-8 inch diameter, and to one and one-half purse per day. | |
| Sprinkling cart | special |
| Stables, livery, feed, etc., including carriage, washing, per stall | 1.50 |
| Steam boilers, per horse power | 2.50 |
| Stone work, per perch | .05 |
| Stores and shops | 8-20.00 |
| Urinals, each | 6-12.00 |
| Water closets, private, each seat | 3.00 |
| Water closet, school, each seat | 8.00 |
| All other purposes, not enumerated, at agreed rates. | |

SHEETZ & WAIT for appellant.

(1) When a construction by parties has been put on a contract both parties are bound by it. Flint v. Johnson, 4th New Eng. 375, Vermont case decided May 28, 1887; Gibson v. Gurwel, 48 N. W. Rep. 149; Deatman v. Kilpatrick, 46 Mo. App. 624; Reisenliter v. Kirche, 29 Mo. App. 291; Brewing Ass'n v. City, 37 S. W. Rep. 525. (2) Every construction is against a power not expressly granted by the franchise. Springfield v. Smith, 138 Mo. 655 and 656. (3) When

an injunction will lie to restrain company from collecting excessive charges. McDaniel v. Water Works, 48 Mo. App. 273; Reagan v. Loan & Trust Co., 154 U. S. 362; Brewing Co. v. Water Works Co., 34 Mo. App. 49; Young v. Boston, 104 Mass. 95   (4) Custom can not control a contract unless it must have been made with reference to it. Base Ball Club v. Pickett, 44 Am. St. Rep. 304; Hopper v. Sage, 8 Am. St. Rep. 771; Bedfish v. Fox, 39 Am. Dec. 611; 2 Parsons on Contracts [last Ed.], 535; Wolf v. Campbell, 110 Mo. 114.

HENRY WOLLMAN, LEWIS A. CHAPMAN and BENJAMIN F. WOLLMAN for respondents.

(1)   Logically, the first question to settle is, can we have an annual rate and a meter rate at the same time.   The testimony in this case is all one-sided on that question, and that is, that an "annual rate" and a "meter rate" are absolutely irreconcilable with each other, and that it isn't any more possible to have an "annual rate" and a "meter rate" at the same time than it is for a man to walk north and south at the same time.   (2) The terms meter rates and annual rates, have been construed by this court, and the difference between them is very clearly recognized by our courts. State ex rel. v. Water Works, 52 Mo. App. 312; McDaniel v. Water Works Co., 48 Mo. App. 273; Brewing Ass'n v. St. Louis, Sup. C. of Mo. 37 S. W. Rep. 525.

ELLISON, J.—The plaintiffs are citizens of Chillicothe, Missouri.   The defendant is a water company of said city, plaintiffs and others being its patrons. Plaintiffs seek to enjoin defendant from refusing to furnish them water according to the terms of the contract (as claimed by plaintiffs) between defendant and

the city.    The finding and judgment of the trial court was for defendant.    That portion of the contract which concerns this dispute will be found set forth in the statement of the case.

The whole question turns on the proper construction of this contract.    Plaintiffs contend that the words "annual water rates," at the beginning, apply to the entire schedule.    Defendant contends that they have not that effect.    Its contention is that there are words of the contract, which, when considered alone, leave it ambiguous; but when construed with the whole contract, in connection with oral evidence, become clear and are plainly antagonistic to plaintiff's interpretation.

No word or phrase should control the terms of a written contract when the whole instrument shows such was not the intention of the parties.    Not only the whole paper should be examined, but:

CONTRACTS:
construction:
water rates.

"In the construction of contracts, the court will look at all the circumstances of the case, the nature of the property, the occupation and relation of the parties, the usages of the place and of the business to which the contract relates, and ascertain, by reasonable inference, what the parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it."    Dwelley v. Dwelley, 143 Mass. 509.

In Davis & Rankin v. Hendrix, 59 Mo. App. 444, we hold that the words "we agree," did not import a joint obligation on the signers of a contract, when the whole paper, in the light of the purpose and object of the contract, disclosed an intention to be bound severally.    There can scarcely be a doubt of the correctness of this statement of the law.    Many cases cited in

defendant's brief illustrate the rule and its common application. Applying the rule to the contract in question it leaves no doubt whatever, that the plaintiffs are without reasonable support in their view and contention. It is true the contract recites that defendant should furnish water to its patrons "at prices not exceeding the following schedule of *annual* water rates," but the schedule which follows clearly shows upon its face, that all the rates were not annual. It shows rates for purposes which were necessarily annual, and rates which were necessarily not annual (distinguished as "meter rates"), as well as rates which were neither meter nor annual. The controlling influence of the words, "the following schedule of annual water rates," is thus destroyed by the schedule itself. When the schedule calls for a meter rate, it prescribes a price per quantity as it may be measured by the meter. When the schedule calls for many other rates, which we find therein enumerated, it necessarily calls for an annual sum for the water, unmeasured, whether the quantity be great or small. To illustrate from the schedule itself; when the schedule calls for a rate of five cents per one hundred gallons, it necessarily calls for measurement, and the meter rate finds application. When the schedule calls for a rate of $8 "for one basin in a bank," it excludes the idea that the water is to be measured, since the measurement would be attended with some expense and wholly unnecessary, as the price is fixed without regard to measurement. To such item the annual rate finds a ready and reasonable application. As testified by several witnesses, a "meter rate" and an "annual rate" are opposite terms, or expressions, in water works parlance. Again, when the schedule calls for a rate of ten cents for every thousand brick laid, it provides for the sale and consumption of water which is neither an annual nor a meter rate; for

the rate has no relation to time of use or quantity used. From these, and many other illustrations that might be taken from the schedule, it becomes apparent that the words, "annual water rates," do not apply to those portions of the contract which call for meter or measured rates. In the annual rate the price is fixed without regard to quantity furnished; while in the meter rate the price is regulated by the quantity used.

But it is a part of plaintiffs' argument here that the annual rate and meter rate may be harmoniously applied together—that the meter rate must be applied to what is used per annum and thereby we would have an *annual meter rate.* In other words, the amount which the meter showed had been used in a full year should have the meter rate applied to it. The motive, as applied to either party, back of the controversy, is apparent. The prices in the meter schedule lessen as the quantity consumed increases. Thus, a consumer can get ten thousand gallons or more, at a less price per gallon than he can get one thousand gallons. So it becomes important as to when the measurement is taken, or, in other words, whether the meter schedule applies to a daily or yearly consumption. If measured by daily consumption, there is less quantity and as a consequence, higher price per gallon for each day of the year; whereas if it was only measured at the end of the year a large consumption would be shown, which would be paid for at the low rate.

Having shown that the words, "annual water rates," were not intended to control the schedule which follows, and no other time rate being mentioned, it becomes necessary to ascertain what time should be applied to the meter rates. Plaintiffs contend it should be annual and the defendant that it should be daily, to be ascertained by the whole measurement for a

month an·l dividing that total by the number of days in a month to find the daily average.

The face of the contract itself is ambiguous as to these opposing views of the parties. In such case it becomes necessary for the court to resort to oral testimony as an aid in ascertaining the intent of the parties. The intention of the parties must govern. And here the testimony is abundant to support the court's finding that the defendant's contention was the meaning intended to be expressed by the parties. The contract itself shows this view to be much more reasonable than plaintiffs' contrary view. The patrons of the company had meters put in and connected with the defendant's water supply. These meters must be examined by the defendant in order to ascertain what quantity, if any, was being consumed by different patrons. It would be out of all reason to suppose that defendant would agree to keep up an inspection of a meter, and a water supply at all times in readiness, in case it was wanted, to find at the end of a year that nothing had been consumed and therefore nothing was due.

The remaining difference between the parties consists in the question whether defendant has the right under the contract to exact of patrons —:—:—: using a meter a minimum charge of sevmeter charge. enty-five cents per month though they did not consume any quantity of water. The trial court held that it did.

The contract contains no rate or provision for a charge where the quantity consumed is less than an average of one hundred gallons daily. The defendant then, being ungoverned by contract, might reasonably charge for the use of a less quantity, a proportionate price to one hundred gallons daily, the smallest quantity provided for. Neither does the contract provide for a charge for inspecting the meter, etc., when the

water is turned on but none used.    The defendant
then, apart from the contract, had a right to fix a fair
and reasonable minimum  charge to  compensate it for
necessary expense and service  in inspecting  the meter
and,  as just stated, for  water used  in a  quantity not
provided for by the contract.    Seventy-five cents per
month was found by the court to be a reasonable
charge for the meter service.    Add to that sum, in
cases where the consumption of water is less than pro-
vided by  the contract,  a proportionate  price therefor,
we have, it seems to us, a result fair and just to all
parties concerned.    It will be, of course, observed that
when the consumer uses an average of one hundred
gallons daily or more, the schedule price places it above
the meter charge (or, as it is sometimes called, the
minimum charge for water service) and no question of
a meter charge could arise.

The result is that we must affirm the judgment
and it is so ordered.    All concur.