GREASON et al., Respondents, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, March 7, 1905.**

1. **CONTRACTS: Freight Rates: Railroad Commissioners: Interstate Commerce.** The statutes of Missouri and the rulings of the board of railroad commissioners for the State cannot be applied to a contract for interstate shipments of freight.

2. ———: ———: **Interstate Commerce.** In an action against a railroad company for overcharges of freight for a shipment of "ties" to another State, where the petition counted on contract to ship "lumber" at a specific rate, and not on a violation of the Interstate Commerce Act, it was not material whether that act was violated or not.

3. ———: ———: ———: **Schedule of Rates.** Nor would a statement in the public tariff sheet of the defendant that "ties" would be hauled at the lumber rate be material.

4. ———: ———: ———: **Specific Agreement.** Plaintiff's right to recover depended upon whether the defendant violated an express agreement to carry the ties at a given rate, that is, whether "ties" were included in the term "lumber," the word used in the contract.

5. ———: ———: ———: **Evidence.** In such a case, an opinion of the Interstate Commerce Commission that ties ought to be carried at the same rate as lumber was improperly admitted in evidence and its effect was prejudicial.

6. ———: ———: **Interpretation: Law Question.** Whether hewn ties are included in the term "lumber," in a contract to carry lumber at a given rate, in the absence of testimony as to the meaning, in commercial circles, of the terms used, was a question for the court and not for the jury.

7. ———: ———: ———. In interpreting such a contract, the words were to be understood in their popular and accepted sense, unless something indicated that a different meaning was attached to them by the persons concerned.

8. ———: ———: ———: **Surrounding Circumstances.** But the court should look at the surrounding circumstances, the relations and occupations of the parties, the usage of business, and should adopt an interpretation most likely to give effect to the intention of the parties.

9. ———: ———: ———: **Definition.** The term "lumber" has no meaning in common speech, nor in the definitions of lexicographers, which would include hewn railroad ties, so well established as to compel a conclusion that an agreement to carry lumber at a given rate included an agreement to carry ties at that rate.

10. ———: ———: ———: ———. And where the shipper, known by the carrier to be a dealer in lumber, ties and piling, inquired for the rate on lumber and was given by letter the rate on lumber, and where a different rate was shown to prevail on ties from that on lumber, the letter did not constitute a contract on the part of the shipper to ship ties at the rate given.

Appeal from Butler Circuit Court.—*Hon. Jas. L. Fort,* Judge.

REVERSED.

*Martin L. Clardy, Louis F. Dinning* for appellant.

*E. R. Lentz* for respondent.

STATEMENT.

Plaintiffs compose a firm which does business in Poplar Bluff, Missouri, on the line of the defendant railroad company. The petition alleged and the evidence proved, that for several years prior to 1902, they had been engaged in shipping lumber, railroad ties and piling over defendant's line. It is stated in the petition that railroad switch ties are covered by the general definition of lumber and included among other articles mentioned in the defendant's tariff sheets as hauled for the freight rate on lumber. These matters of inducement having been stated, the plaintiffs averred that prior to January 20, 1902, they had an order for a large lot of railroad switch ties to be delivered at Peoria, Illinois; that before accepting the order, plaintiff wrote to the general freight agent of the defendant company asking a rate "on said commodity" (switch ties) to Peoria; that the agent refused to quote a through rate, but agreed by a letter dated January 20, 1902, to protect a

rate of ten cents a hundredweight from Poplar Bluff and Harviell, Missouri, to East St. Louis, Illinois, on ties destined to Peoria; that relying on said promise, plaintiffs, between February 11, 1902, and May 20, next ensuing, shipped over defendant's road from Poplar Bluff and Harviell, 19 carloads of switch ties aggregating in weight 623,600 pounds, billed to Peoria; that the defendant received the ties at the points of shipment and carried them to East St. Louis, where it delivered them to a connecting carrier, the Chicago & Alton Railway Company; that the defendant collected its charges from said connecting carrier, which in turn collected them from the consignees of the ties, who charged them against plaintiffs' account; that the defendant. instead of keeping its agreement to carry the ties to East St. Louis for ten cents a hundredweight, charged and collected a higher rate, to-wit: thirteen and one-quarter to fifteen cents a hundredweight, which higher rate the plaintiffs were compelled to pay; that afterwards plaintiffs demanded the excess of freight charged ($250) which defendant refused to pay; wherefore judgment was prayed for said sum. The answer was a general denial. The letter mentioned in the petition as containing the defendant's agreement, on which this action is founded, reads as follows:

"St. Louis, Mo., January 20, 1902.
"A. H. Greason & Co.,

"Poplar Bluff, Mo.
"Gentlemen:

"Referring to your favor of the 11th inst., this is to advise you that we have taken matter of rate on lumber from Poplar Bluff, Missouri, to Peoria, Ill., up with the C., P. & St. L., who advise us they will write you direct regarding the rate from East St. Louis. We will protect 10 cents per hundred pounds, East St. Louis, when destined Peoria, Ill.

"Yours truly,
"J. E. LINCOLN, T. M."

The petition says the above letter was received in answer to an inquiry addressed by the plaintiffs to the defendant's general freight agent for a rate on switch ties from Poplar Bluff and Harviell, Missouri, to Peoria, Illinois. The words of the petition are that plaintiffs asked the rate on "said commodity;" but preceding averments show that "commodity" meant railroad switch ties. The testimony of the assistant general freight agent of the company was that the letter which gives a rate for hauling lumber was written in answer to one received from the plaintiffs, January 11, 1902, asking for the rate on lumber from Poplar Bluff, Missouri, to Peoria, Illinois; and it is not denied that plaintiffs' inquiry was regarding the lumber rate. The articles actually shipped were hewn switch ties. The defendant company charged the plaintiffs more than ten cents per hundredweight for transporting the ties from the points of shipment to East St. Louis. The essential dispute is as to whether the letter from defendant's freight agent, quoting a rate for hauling lumber, constituted an agreement on the part of the defendant to carry hewn switch ties at ten cents a hundredweight—that is, whether hewn ties are lumber within the meaning of the defendant's agreement to transport lumber for ten cents a hundredweight. To maintain their position that switch ties are lumber the plaintiffs, over the defendant's objection, introduced the definition of the word "lumber" given in the Universal Dictionary, to-wit: "Lumber (Noun)—Marketable timber. Lumber (Verb) —To cut forest timber and prepare it for market." An exception was saved to the admission of that evidence. Plaintiff next introduced, over the objection of the defendant, a freight tariff sheet issued by defendant, effective February 15, 1900:

"Lumber rates will apply upon lumber, except walnut, butternut, cherry and woods of value, and as otherwise provided, and also on the following articles, in straight or mixed C. L., minimum weight 30,000

pound's per car, except when car is loaded to full visible physical capacity, when actual weights will apply, subject to a minimum of 24,000 pounds."

(Here follows a long list of articles, such as:

> Base boards,
> Box lumber or shooks, including scarfed berry box material, in bundles or racks,
> Carpenters' mouldings,
> Fence posts,
> Handles, in the rough,
> Lath, pine,
> *Lumber, including ceiling, flooring* (except wood carpet) *wainscoting,*
> Piles,
> Telegraph and Telephone poles.)

"Articles taking higher than lumber rates—walnut, butternut, and cherry lumber and walnut logs (squared), C. L. 3 cents above lumber rates.

"Mahogany, holly and woods of value—see classification.

*"All other woods, lumber rates.*

"The following articles, when loaded in straight or mixed C. L. will take 1 cent per 100 pounds above the lumber rates, subject to the minimum weights governing shipments of lumber.

"When loaded with articles taking lumber rates they will take 3 cents over the lumber rates on the actual weight of such articles, provided they are specified on shipping tickets; if not so specified the regular L. C. L. rating will apply. The total charges on the entire carload, however, are not to exceed the charges on a straight or mixed C. L. of articles taking one (1) cent per hundred pounds above lumber rates."

(Here follows a long list of articles such as:

> Angle heads,
> Balusters,
> Carpenters' mouldings,
> Door jambs,

Porch Newels,

Porch columns,

Stair work (newels, risers, treads, railings, balusters, and post ornaments), ′K. D.)

"The basis for rates on inside finish material will not apply on articles named when polished or varnished.

"Note.—The foregoing rates will not apply on articles named when manufactured from mahogany, rosewood, lignum vitae or other valuable foreign woods.

"The following articles, when loaded in straight or mixed C. L. will take 5 cents per 100 lbs. above the lumber rates:

Ax handles, turned, not further finished.

Handle butts, turned, not otherwise finished,

Lasts, in rough,

Sleigh wood, turned, not otherwise finished,

Shapes for vehicles, dressed.

Shapes for agricultural implements, dressed.

"Pilings, logs, telegraph or telephone poles and other long timbers requiring more than one car, will be charged for at a minimum weight of 20,000 pounds for every car used."

It was not shown whether the tariff sheet was published in compliance with the statutes of the State of Missouri or with the Interstate Commerce Act.

Plaintiffs next introduced in evidence, over the objection of the defendant, the opinion of the Interstate Commerce Commission in the case of Reynolds v. Ry. Co., 1 I. C. C. 393. This case was decided by the Interstate Commerce Commission in 1888. The effect of the decision is that, to conform to the spirit of the Interstate Commerce Act, ties, sawed and hewn, should be put in the same classification as lumber in fixing the rate for transporting them. The defendant then put in evidence the deposition of E. B. Lane, Assistant General Freight Agent of the defendant company, whose testimony, in substance, was that the defendant did not

charge interstate commerce rates on shipments of freight from points in Missouri to East St. Louis, Illinois, but charged the local rates from the points of shipment to St. Louis, conforming in fixing the local rates, to the statutes of Missouri and the orders of the State Board of Railroad Commissioners; that the rate on lumber from Poplar Bluff to East St. Louis was ten cents a hundredweight; that sawed railroad ties were classed as lumber, but hewn ties were not and the charge for hauling hewn ties is three and one-quarter cents a hundredweight more than for hauling lumber; that prior to 1903 the defendant's tariff provided that switch ties should take the statutory rate, which was thirteen and one-quarter cents a hundredweight; that hewn ties had never been classed as lumber by defendant nor shipped at lumber rates, but defendant had always had a special rate for them; that the tariff sheet above mentioned, where it used the words "all other woods, lumber rates," after the words "mahogany, holly and woods of value (see classification)," meant all other woods shipped in the shape of timber, but did not mean switch ties, as such ties are not lumber; that the State of Missouri, through its Board of Railroad Commissioners, prescribed what should be charged for shipments of railroad ties and the statutes of the State classified railroad ties; that the rate prescribed by the Board of Commissioners, under the statutes, for hauling hewn ties differed from the rate prescribed for hauling lumber.

At the conclusion of the evidence the court gave the following instruction, to which the defendant excepted:

"The court instructs the jury that if you believe and find from the testimony in this cause that the plaintiffs applied to the defendant for rates on the material shipped to Peoria, Illinois, and that in response to said request the defendant declined to make a through rate to Peoria, Illinois, but did quote a rate on said material to East St. Louis, Illinois, from Poplar

Bluff and other points, taking the same rate as Poplar Bluff, of 10 cents per hundred pounds, and if you believe that hewn switch ties are included in the general definition of lumber and that defendant's classification of freight includes switch ties with articles taking lumber rates, and if you further believe and find from the evidence that pursuant to defendant's quotation of a rate of ten cents per hundred pounds to East St. Louis, Illinois, plaintiffs shipped any amount of switch ties over defendant's railroad to Peoria, Illinois, via East St. Louis, Illinois, and that defendant charged plaintiffs any greater or higher rate for the transportation of said material to East St. Louis, Illinois, than the said ten cents per hundred pounds, so quoted to plaintiffs, for said services, then plaintiffs are entitled to recover in this action all such sums as they were compelled to pay for the transportation of the said material, in excess of the said rate of ten cents per hundred pounds and not exceeding the sum of two hundred and fifty dollars, the amount claimed by them in their petition."

The jury returned a verdict for plaintiffs for $19.46 and the railroad company appealed.

GOODE, J. (after stating the facts).—It will be observed from the foregoing statement that the plaintiffs declared on a supposed agreement by the defendant contained in the letter dated January 20, 1902, to transport switch ties from Harviell and Poplar Bluff to East St. Louis, for ten cents a hundredweight. It is alleged that, relying on said agreement, plaintiffs shipped nineteen carloads of ties and were charged an excess above the rate mentioned, in violation of the agreement. The letter quoted a rate on lumber, not on ties. The solution of this case depends, therefore, on what the defendant meant by the word "lumber" or rightly was understood by plaintiffs to mean. The meaning of the word is vague and indefinite and it has different senses according to the context in which it is used in docu-

ments, or the nature of the transactions to which the parties refer. Most often it designates materials of wood used in constructing houses, fences and other like structures—wooden building material. The Standard Dictionary defines it as "Timber sawed into merchantable form; especially boards;" The Century as: "Timber sawed or split for use, such as joists, boards, planks, staves, hoops, and the like;" Webster's Unabridged as: "Timber sawed or split into the form of beams, joists, boards, planks, staves, hoops, etc., especially that which is smaller than heavy timber." We have found a decision that "timber" as used in a statute giving a lien for supplies furnished to men getting out logs and timber includes ties. Kalloch v. Percher, 47 Wis. 189. No decision has been cited that "lumber" means hewn ties. If the word lumber has any peculiar meaning among dealers in it or in transportation circles, which would embrace or exclude hewn ties, no evidence of the fact was offered. The meaning to be applied to the word in the letter in question is its ordinary meaning in vernacular speech, unless the previous dealings between the plaintiffs and the defendant, or the circumstances under which the letter was written, or the light thrown on the intention of the letter by the other facts in evidence, the tariff sheet and the testimony of the freight agent, compel a different significance. All this evidence was introduced by the plaintiffs and they are in no position, therefore, to deny its truthfulness. We emphasize the fact that this is an action on a specific written agreement and is to be determined exclusively by ascertaining what that agreement was. Laclede, etc., Co. v. Iron Works, 169 Mo. 137, 69 S. W. 384. It is not an action for violating the Interstate Commerce Act as construed by the Interstate Commerce Commission, nor for violating the statutes of the State of Missouri in regard to freight rates, nor the orders of the State Board of Railroad Commissioners. Some stress is laid by the defendant's counsel on the cir-

cumstance that railroad ties have a special classification under the statutes of Missouri and that rates for hauling them are fixed by the State Board of Railroad Commissioners. It is true railroad ties are included in class J of the statute classifying railroad freights. R. S. 1899, sec. 1193. Lumber is not classified by the statute; therefore its classification might be made, we suppose, by the Board of Railroad Commissioners. Ross v. R. R., 111 Mo. 18, 19 S. W. 541. But the statutes of Missouri and the rulings of the Missouri Railroad Commissioners have nothing to do with the shipments involved in the present case, which constitute insterstate commerce, as they were made from points in Missouri to a point in Illinois. The Missouri statutes recognize principles of freight regulations and classification similar to those recognized by the national government, but confine the State regulation of railway transportation to shipments from one point in the State to another. We have little doubt that switch ties, sawed or hewn, when hauled from one State to another, ought to be carried at the same rate lumber is. The Interstate Commerce Commission decided as much in Reynolds v. R. R., supra. In saying what is a just classification of articles for the purpose of fixing a scale of transportation charges, the commission has regard to comparative weights and values in proportion to dimensions, and holds that those articles which carry, approximately, the same value and weight with the same bulk, ought, as a rule, to be hauled for the same freight rate. The Howard Co. v. Railway Cos., 4 I. C. C. 212. And when some article is not named on a railway tariff sheet among any of the different classes of freight for which different carriage rates are charged, it is classed with articles analogous to it in weight and value and takes their rate. The Howard Co. v. Ry. Cos., 4 I. C. C. 212, 218; Hulburt v. Ry. Co., 2 I. C. C. 122, 129. According to this rule of classification and the decision in Reynolds v. Ry. Co., it may be that the plaintiffs could have

compelled the defendant company to carry hewn ties to a point outside the State at the lumber rate, or have obtained damages, if it refused to do so, for a violation of the Interstate Commerce Act.     These observations are not very pertinent to the decision of the present case, but are made because we discern in the record and in the argument of plaintiffs' counsel an effort to supplement the case on the specific agreement for breach of which they demand redress, with irrelevant matters, by showing a violation of the Federal law regulating interstate commerce; also by showing a charge for hauling the ties in excess of the one advertised in defendant's tariff sheet.     The petition does not count on a violation of the Interstate Commerce Act as construed by. the commission.     Neither does it count on notification to the public in the tariff sheet of the defendant that ties would be hauled for the lumber rate; granting, for argument's sake, that the defendant's published schedules contained such a notice.     Defendant's tariff sheet might help the plaintiff's cause by indicating that the railway officials embraced ties in the word "lumber". when used by them in statements of freight rates; but could not afford a ground of recovery in this action. by stating expressly or impliedly, that ties would be carried for the lumber rate.     If such a statement had been relied on by the plaintiffs and disregarded by the defendant, the facts might have constituted a good case in a petition properly charging them as a cause of action.     But this case; as pleaded, rests on the agreement contained in a particular document which is specifically designated in the petition—the letter written by defendant's freight agent, January 20, 1902.     The statement in the petition that hewn ties are included among the articles mentioned in defendant's schedule as hauled at lumber rates is not alleged as the gravamen of the case pleaded.     There can be no recovery except for a breach of the defendant's agreement expressed in that letter.     As the agreement was to transport lumber for

a given rate, and the plaintiffs shipped hewn ties, they can recover only in case lumber meant ties. If they shipped no lumber, but something else, defendant's undertaking was not broken, even though its charge exceeded the quoted rate. The learned circuit judge partly adopted this view in that portion of the instruction which left it to the jury to say whether hewn switch ties are included in the general definition of lumber. But the issues were broadened by the part of the instruction which made a finding that the defendant company, in its classification of freight, included ties among articles taking the lumber rate, ground for a verdict against the defendant. As we have said, the railway company's published classifications of freight might assist the plaintiffs by showing ties were one of the articles called lumber, and thus supporting the interpretation that the agreement in the letter of January 20th to carry lumber at ten cents a hundredweight was an agreement to carry hewn ties at that rate. But putting such ties among other articles enumerated on the tariff sheet to be carried at the lumber rate would have no tendency to prove a violation of the agreement about lumber; rather the contrary; for it would tend to show the defendant did not use the word "lumber" as a name for hewn ties, but designated them by their own name. The instruction was erroneous in its reference to the effect of defendant's classification of hewn switch ties. Besides, the deposition of Lane, defendant's official who was introduced by plaintiffs, showed the defendant gave a separate and higher rate for hewn ties in its tariff sheets, instead of classing them with articles that were hauled at the lumber rate, or meaning to give a rate on ties when they quoted the one on lumber. The tariff sheet introduced by plaintiffs strengthens this view. It tends to prove the defendant company did not use the word "lumber" to designate anything but building material; at least, not meaning railroad ties. In the long list of articles carried at

lumber rates, we find enumerated thirty different kinds of wooden articles, and among them this one: "Lumber, including ceiling, flooring (except wood carpet), wainscoting." Articles are enumerated next which take a higher rate than lumber, and fifty-two of them are named. Of these, forty-six took three cents above the lumber rate and six, five cents above. Railroad ties are not named in either list, but are said to be included in the expression "all other woods, lumber rates." That expression follows immediately the enumeration of "mahogany, holly and woods of value," which take three cents above the lumber rate; as do walnut, butternut, cherry and walnut logs. It was explained by the general freight agent that "all other woods, lumber rates," meant all other woods in the shape of lumber. Be that as it may, the expression "all other woods, lumber rates" tends to refute the contention of plaintiff's counsel that the noun "lumber" was used by the defendant in a general sense to designate all kinds of woods and, therefore, hewn ties. If this had been so, the mere statement of the rates charged for lumber would have stated the rate for all manufactured woods and it would have been unnecessary to enumerate articles carried not as lumber, but for the lumber rate.

All the evidence tending to explain what the defendant meant when it said "lumber," either in the letter declared on or other documents, goes to show it did not mean hewn switch ties. The opinion in the Reynolds case was wrongly admitted as evidence. It threw no light on the meaning of the word "lumber" in defendant's letter to the plaintiffs and probably prejudiced the jury against the defendant by imparting the belief that it had violated the Federal laws in charging a higher rate on switch ties than on lumber. We know of no rule of evidence by which that decision could be a material fact for the jury's consideration.

But was the sense in which the defendant used the word lumber in its letter a matter for the jury to de-

cide? If there had been contradictory evidence as to its
signifying hewn ties, as used in the lumber trade, it
would have been for the jury to weigh such evidence,
but there was no testimony, either harmonious or con-
flicting, that it meant ties in commercial circles or was
used in any other sense than its vernacular one. As we
have seen, the evidence had no tendency to prove the de-
fendant was accustomed to use it in any other sense,
either in general business or its dealings with the plain-
tiffs. The rule of law that extrinsic evidence may be
received to identify the subject-matter of an ambiguous
contract, has no application here, because the agreement
in defendant's letter had no particular subject-mat-
ter. That rule is employed to ascertain what prop-
erty was intended by an agreement in reference to
some particular property too loosely described to
be identified from the description alone. Thus if a
contract of sale describes the thing sold indefinitely, it
may, within limits, be helped out by extrinsic evidence.
Macdonald v. Longbottom, 1 E. & E. 597; M'Adie v.
Sills, 24 U. S. C. 606; 2 Taylor, Evidence (6 Ed.),
sec. 1080. We conceive it to be the duty of a court to
say what is meant by a word in an instrument, used as
far as appears, in its ordinary, instead of a technical
or trade sense, or a peculiar one adopted by the parties.
As "lumber" is a word of vague meaning, testimony to
show the sense in which these parties used it was com-
petent; but there was none introduced to show it was
employed in an unusual sense and, therefore, its usual
one must be accepted in interpreting their agreement.
Williams v. Lumber Co., 72 Wis. 487; Dutch v. Ander-
son, 75 Ind. 40. The words of a contract are to be un-
derstood in their popular and accepted sense unless
something indicates that a different meaning was at-
tached to them by the persons concerned. Lovelace v.
Assn., 126 Mo. 104, 28 S. W. 877. And it is the duty of
a court to interpret writings free from ambiguity. Ma-

thews v. Danahy, 26 Mo. App. 660.  In performing this duty a court will reject a strained and unnatural construction of the terms used, which would impose on a party to the agreement a liability neither called for by its language, nor the relations of the parties when it was made.  St. Louis Transit Co. v. York, 81 Mo. App. 342.  But the court will look at the circumstances under which the contract was made, the relations and occupations of the parties, the usage of business and what they must have mutually understood and expected the agreement to cover, and will adopt the interpretation most likely to give effect to the intention of the parties.  Carney v. Water & Light Co., 76 Mo. App. 532. With these trite rules in mind, let us endeavor to determine whether the defendant company intended to agree to haul switch ties for ten cents a hundredweight, when it agreed to haul lumber at that rate, or reasonably could have been understood to so intend by plaintiffs. We hold that in common speech "lumber" has no meaning that includes hewn railroad ties, so well established as to compel the conclusion that defendant agreed to carry hewn ties for the rate quoted to plaintiffs for lumber.  Ties are not embraced in the definitions of lumber given in lexicons enjoying the highest authority, and we doubt if the word is ever used to mean hewn ties. Plaintiffs were in the habit of shipping lumber, ties and piling; they say they had received an order for a large lot of railroad ties and before filling it took pains to inquire of the defendant what rate it would charge to carry that commodity from Harviell and Poplar Bluff to Peoria, Illinois.  In truth, they inquired the rate for hauling lumber.  Why the plaintiffs, who were regular shippers of several products of wood, should inquire the rate on lumber, when they intended to fill an order for railroad ties, instead of asking specifically for the rate on ties, they do not explain.  Their inquiry was misleading and possibly artful.  It may be that it was framed for the purpose of inducing the defendant to

state a lower rate than it would if asked definitely in regard to switch ties. Defendant's general freight agent, knowing the plaintiffs to be dealers in lumber, ties and piling and shippers of the three articles, was very unlikely to understand a request for a rate on lumber as a request for a rate on hewn ties. In truth he was certain not to understand it that way, as the company rated hewn ties separately. The plaintiffs proved there was a rate on hewn ties at the time higher than the lumber rate; a fact they, as constant shippers of both lumber and switch ties, must have known.

Adverting again to the argument pressed by plaintiffs' counsel that his clients ought to recover because ties are manufactured wood and, therefore, to be classed among the woods which were hauled at lumber rates, we answer that this carries the implication, not that ties are lumber, but that as manufactured wooden articles, they were to be transported for the same charge. The essence of this case is not whether ties ought to have been carried at lumber rates according to the tariff sheets (and the tariff sheets in fact stated to the contrary), but whether defendant, when it gave a rate for lumber, meant to give and was understood to give a rate for hewn switch ties. Curtain poles and wagon spokes are put in the tariff sheets among other things carried at the lumber rate. But who would say they are lumber or that an agreement to carry lumber was an agreement to carry them? Neither the letter itself, nor the extrinsic evidence before us supports the plaintiffs' case. The judgment is, therefore, reversed. All concur.