A. McKINSTREY, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 13, 1911.

1. COMMON CARRIERS: Shipping Horses: Notice of Damage. The provision in a contract of shipment that notice of loss or injury be given one day after delivery at destination, is valid, but it must be reasonably and justly construed in its application to the facts in each case.

2. ———: Contract of Shipping. The contract of a common carrier with a shipper limiting the carrier's common law liability is valid if made in consideraton of a reduced rate, but where there is no reduced rate or other valuable consideration, the carrier is liable just as if the contract contained no such stipulation.

3. ———: Contracts of Shipping. A contract of affreightment is governed by the law of the place where it is made, unless it appears that it was otherwise intended by the parties.

4. ———: **Evidence.** The common understanding is sufficient to enable a person to form a reasonable opinion as to the effect of keeping a horse on a train for a period of fifty-seven hours, tied with two ropes, one from either side of the car with its head toward the center of the car, and the admission of such testimony was not error.

5. ———: **Evidence: Production of Papers.** The admission of evidence of notice to defendant to produce certain documents and papers did not greatly prejudice the defendant, as there was no attempt to prove a different case from that shown by exhibits actually produced during the trial.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*M. A. Low* and *Scbree, Conrad & Wendorff* for appellant.

The demurrer should have been sustained for the reasons: The evidence wholly failed to show the horses were not fed, watered and cared for in transit; assuming they were not fed, watered and cared for in transit, the evidence failed to show that that fact caused the death of the horse. McGrath v. St. L. Transit Co., 197 Mo. 97, Purcell v. Tennent Shoe Co., 187 Mo. 276, Goransson v. Mfg. Co., 186 Mo. 300; Harper v. Terminal Co., 187 Mo. 575; Demaet v. Storage, Packing, etc., Co., 121 Mo. App. 92; Caudle v. Kirkbride, 117 Mo. App. 412. Plaintiff did not notify defendant of injury to the horse in question as provided by section 7 of the live stock contract. Smith v. Railroad, 112 Mo. App. 610; Freeman & Hinsen v. Railroad, 118 Mo. App. 526; Letts v. Railroad, 131 Mo. App. 270; Shelton v. Railroad, 131 Mo. 560.

*Guthrie, Gamble & Street* and *J. M. Rader* for respondent.

BROADDUS, P. J.—This is an action to recover damages for the alleged negligence of the defendant in

the shipment of two Percheron stallions on October, 15, 1906, by Singmaster & Sons, as agents of plaintiff from Keota, Iowa, to Meta, Missouri.

The petition of plaintiff is based upon the negligence of the defendant in failing to unload, feed and water and to allow said horses to rest in transit, and that in consequence of such negligence, one of said horses died.

The defendant's answer was a general denial of the allegations of the petition; and that under the terms of the contract of shipment plaintiff assumed all risk and expense of feeding, watering, bedding and otherwise caring for said horses while in defendant's cars, yards, pens or elsewhere; and that he would unload them at his own expense; and that as a condition precedent to his right to recover any damages, plaintiff agreed that as soon as he discovered any loss or injury to said horses he would give notice thereof in writing to some general officer, claim agent or station agent of defendant, before said horses were removed from the point of shipment, etc.; and that such notice should be served within one day after the delivery of the horses at their destination, etc.; that plaintiff failed to give such notice within the time provided for in said contract; and that plaintiff agreed that in no event defendant should be liable for more than one hundred dollars for each animal.

Plaintiff replied that said provisions in said shipping contract set up by defendant were void under section 2074, Code of Iowa; and that there was no consideration for any of said provisions attempting to limit defendant's liability as a common carrier; that defendant gave plaintiff no opportunity for feeding, watering and caring for said horses; and that defendant's agent saw the condition of the horses as soon as they were taken off the train at their destination.

The evidence showed that on October 15, 1906, at 6 o'clock p. m., Singmaster & Sons, as agents of plaintiff,

in compliance with a telegram sent by plaintiff from Trenton, Missouri, shipped the two horses for plaintiff from Keota, Iowa, to plaintiff at Meta, Missouri. The contract of shipment provided that plaintiff assumed all risk and expense of feeding, watering and caring for the horses while in cars . . . and would load and unload the same at his own expense and risk; that as a condition precedent to the bringing of any suit for damages for any loss or injury to the horses plaintiff would as soon as he discovered such loss or injury, promptly give notice thereof in writing to some general officer, claim agent or station agent of defendant before said horses were removed from the point of shipment or place of destination, which should be served within one day after the delivery of the stock at its destination, in order that such claim may be fully and fairly investigated.

Singmaster & Sons prepared the car by putting a little hay therein, for the horses to stand upon, loaded and tied the horses in each end of the car, the heads towards the center of the car, with two ropes, one from either side of the car, on each horse.

Plaintiff in his telegram to Singmaster & Sons, directed them to wire him when loaded. He remained at Trenton intending to meet the horses there and go with them to Meta, and feed, water and care for them in transit, but plaintiff failed to receive such notice of the time of the shipment of the horses, and they arrived at and passed through Trenton without plaintiff's knowledge. When he learned that the horses had passed through Trenton he took the next passenger train and arrived at Meta about 3:30 o'clock a. m., October 18th. The horses arrived on the 17th of October, at 9 o'clock p. m., when the car was set at the chute for unloading. Meta is a small place, where defendant employed only a station agent and had no yard crew. When plaintiff arrived at Meta he untied the horses so that they could lie down, watered and fed them and left for a short time,

when he returned without saying anything about what he intended to do he took the horses out of the car and to the livery stable and fed them again. Afterwards, he led the horses to a small creek and into eight or ten inches of water four or five times a day for about two or three days. On or about the 20th, one of them showed symptoms of lung fever or pneumonia. On the following day plaintiff began to doctor the horse with linseed and castor oil, and the next day gave him ten or twelve drops of aconite every three hours until he died. He also gave him laudnum.

It was shown that the horses were tied in such a manner that they could not eat of the hay put in the car and that they were so tied that they could not lie down.

The plaintiff's evidence tends to show that the horses were not fed or watered during transit, while that of defendant tends to show that they were fed and watered. There was evidence, however, of a positive character that they were fed and watered a short while before they reached their destination.

Plaintiff's evidence tended to show that the treatment the horses received while in transit would probably cause them to become diseased and that lung fever or pneumonia with which one of them died was the probable result of such treatment.

The defendant sought to show that the medicine that plaintiff administered to the horse and allowing him to go into water eight or ten inches deep to drink, were the procuring causes of the death of one of them.

The distance from Keota to Meta is about 322 miles, and the time in which the horses were in transit was about fifty-seven hours.

Plaintiff testified that when he took the horses from the car, "they were badly shrunk and drawn, . . . and that they were so sore they could hardly get out to the track. Their heads down. They were in very bad condition."

The shipping laws of the State of Iowa were introduced in evidence over the objections of defendant.

The plaintiff was permitted over the objection of defendant to read a notice to produce the way bill of the car described, a copy of which was attached to defendant's answer and other documents and letters alleged to be in defendant's possession.

Plaintiff was also allowed over the objection of defendant to prove what effect the keeping of a horse on a train for fifty-seven hours and forty minutes, tied in the position as shown that he was tied, without food and water, based on his experience in handling and shipping horses, would have on it. The witness had stated that he had had experience in shipping horses.

The paragraph in the contract in relation to rate and tariff reads as follows: "One car, said to contain two stallions, from Keota station, to Meta, Mo., station, consigned to A. McKinstry, Meta, Mo., at the rate of trf. per 100, from—— to——, subject to minimum weight and length of cars specified and provided for in the tariff; said rate being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other considerations it is mutually agreed between the parties hereto as follows," etc.

The plaintiff recovered judgment and the defendant appealed.

We will first consider the preliminary question of the plea in bar interposed by the defendant of the failure of plaintiff to give notice of his loss as provided by the contract. It is held that such stipulations in a contract of shipment are not in contravention of public policy and are therefore valid, but, "that they must be reasonably and justly construed in their application to the particular facts of each case." [Ward v. Mo. Pac. Ry. Co., 158 Mo. 226; Holland v. Railroad, 139 Mo. App. 702.]

The plaintiff under the circumstances in proof could not have given notice of his loss within one day

after the arrival of the horses at their destination, as the extent of such loss was not manifest until several days thereafter. He did not and could not know upon their arrival that one of them would develop a fatal case of pneumonia, therefore, such provision in the contract of shipment was no defense to an action thereon. [Burns v. Ry. Co., 132 S. W. 1.]

And it is held, under the provisions of the amendment to the Interstate Commerce Act, known as the Hepburn Bill, a carrier cannot contract with the shipper for interstate transportation of freight, whether supported by a good consideration or not, affecting any part of the carrier's common-law liability. [Holland v. Railroad, 139 Mo. App. 702; Blackmer & Post Pipe Co. v. Railroad, 137 Mo. App. 479.]

However, the Springfield Court of Appeals holds, that, the foregoing rule does not apply to interstate shipments. [McElrain v. Railway, 131 S. W. 736.] As that case is in conflict with the two cases cited the court has certified it to the Supreme Court.

Whether such conditions are valid when supported by a valuable consideration, it is the well-settled law of this state that notwithstanding the recitation in a contract of shipment that such conditions are made in consideration of a reduced rate, if there is no such reduced rate or other valuable consideration the carrier is liable just as if the contract had contained no such stipulations. [George v. Railroad, 214 Mo. 551; Ward v. Railroad, supra.]

And the recitation in the contract specifying the price for transportation to be, "at the rate of trf. per 100" means that the shipment was at the regular schedule tariff rates in the absence of evidence that the rate was in fact a reduced rate. [George v. Railroad, supra.]

The holding of the Springfield Court of Appeals does not apply to the contract in this case, because it is different from the one there considered, and different from that in the George case, supra.

It is a rule of law, that a contract is to be interpreted by the law of the place where made. The law of Iowa introduced in evidence where the contract was made provides that: "No contract, receipt, rule or regulation shall exempt any railway corporation engaged in the transportation of persons or property, from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into."

The defendant insists that as the contract was not to be executed in Iowa but in Missouri, the law of the latter is to control. The case of Greason v. Ry. Co., 112 Mo. App. 116, cited by appellant, has no application to the question. In Bigelow v. Burnham, 83 Iowa 120, where a note was executed in one state and made payable in another, held, that the laws of the latter governed. And to the same effect is the holding in Hall v. Cordell, 142 U. S. 116, and such in the conceded law.

The rule applicable is otherwise. "A contract of affreightment is governed by the law of the place where it is made, unless it appears it was otherwise intended by the parties." [Otis Co. v. Ry. Co., 112 Mo. 622.] Whether we apply the law of this state, of Iowa or the Hepburn Bill of Congress, the provision for notice is invalid.

One of the errors assigned in the admission of testimony was in permitting plaintiff to testify as to the effect of keeping a horse on a train for a period of 57 hours, tied as the one in question was shown to have been. Plaintiff was shown to have had such experience as qualified him to testify as to that matter. In our opinion the common understanding of ordinary minds would enable a person to form a reasonable opinion upon the hypothesis. It is reasonable to infer that the horse sickened because of his weakened powers of resistance to disease. [Gilbert v. Railroad, 132 Mo. App. 687.]

It is argued that the court committed error in permitting plaintiff to introduce in evidence the notice to defendant to produce certain documents and papers. The notice was read after defendants failed to account for or produce the documents called for therein.

It is said that this question has not been passed on by any of the appellate courts of this state. There are some authorities that hold under the circumstances that such is competent evidence. It is said that: "The mere withholding or failing to produce evidence, which under the circumstances would be expected to be produced and which is available, gives rise to a presumption against the party." [Jones on Evidence, sec. 17.] And similarly in Clifton v. U. S., 4th Howard 242. However the law may be, we are of the opinion that defendant could not have been greatly prejudiced thereby, as there was no attempt upon the part of plaintiff to prove a different case from that shown by the exhibits actually produced during the trial.

Finally it is contended that upon the whole record it was not shown that the disease which was the cause of the animal's death was produced by the treatment he received while in transit. It is argued that the expert testimony failed to establish that fact; and that the evidence was to the effect that the disease was the result of taking him to a stream of less than a foot in depth for the purpose of giving him water.

If we have read the record correctly and we believe we have, the preponderance of all the evidence including that of the experts, tends to show that the disease which the horse contracted from the effects of which he died, was traceable to his treatment while in transit. One expert did testify, however, that it was not a proper treatment to let the horse go even in shallow water while he was so afflicted, but none of them testified that the disease was the probable result thereof. And the common understanding of every person who has had much to do with horses, is that letting a horse go into

water reaching scarce above his hoofs could have little or no effect upon his health. And there was ample evidence that the horses were deprived of water, food and rest during their transit. Finding no material error in the trial, the cause is affirmed. All concur.